[Civ. No. 8723. Second Appellate District, Division Two.—September 11, 1934.]

C. W. WITHEY, Respondent, v. HAMMOND LUMBER COMPANY (a Corporation) et al., Appellants.

Jennings & Belcher, Syril S. Tipton, Elmer E. Sawyer and Chas. W. Garland for Appellants.

W. W. Wallace for Respondent.

WILLIS, J., *pro tem.*—This action was brought by plaintiff against Hammond Lumber Company, a corporation, J. W. MacDonald and C. W. Driver, individually and doing business under the firm name of MacDonald and Driver, and John Doe. The latter appeared and answered in the person of L. J. McCormick, an employee of Hammond Lumber Company. The complaint in its essentials alleged that while plaintiff was walking on a sidewalk the defendants negligently drove and operated a large lumber truck in and upon the sidewalk, striking plaintiff and causing the injuries complained of and for which damages are sought. In addition to the general allegation of negligence as to all defendants, it is alleged that defendants gave no notice or warning to plaintiff, or other pedestrians using the sidewalk, that the truck would be moved. Defendants Hammond Lumber Company and L. J. McCormick answered separately, each denying the allegations of negligence and pleading contributory negligence. Defendants MacDonald and Driver answered jointly, likewise putting in issue the charge of negligence on their part and pleading contributory negligence. At the trial the same counsel appeared for Hammond Lumber Company and McCormick, and MacDonald and Driver were jointly represented by other counsel. A trial was had before a jury and a verdict against all defendants above named was returned for the sum of $15,000, on which judgment was entered. Separate motions for new trial were made by the lumber company and McCormick together, and by MacDonald and Driver, which were denied. Separate appeals from the judgment were thereupon taken by the two groups of defendants, and the record presented consists of a transcript on appeal containing the judgment-roll, notices of appeal and a single bill of exceptions, which appellants and respondent stipulate may be used by each appellant on the separate appeals.

The epitomized essential facts which are disclosed by the record are as follows: On October 30, 1930, a building was in course of construction on the west side of Broadway between Sixth and Seventh Streets, in the city of Los Angeles. Appellants MacDonald and Driver were the general contractors constructing such building. A wall or partition had been erected across the front of the premises on the

west part of the sidewalk, with a large door or gate about midway thereof, to permit the entrance to the premises by persons and vehicles. In connection with such wall the outer part of the sidewalk was fenced off, with an overhead canopy or ceiling and with barriers on the street side along the curb, leaving an opening opposite the gate making a passageway or tunnel about four feet wide through and on which pedestrians passed back and forth along that side of Broadway. A short time before 10:25 o'clock A. M. of that day respondent passed along this passageway going south, made purchases in a near-by store and, at the time mentioned, returned going north through the passageway along with other pedestrians. As he approached the part opposite the gate he saw a large empty lumber truck of appellant Hammond Lumber Company standing across the walk, its front end in the street and its dual rear wheels approximately in the center of the sidewalk; the body, which extended some six feet to the rear of the rear axle, projecting about two feet beyond the gate and into the premises. He looked into the cab of the truck and saw no driver in it. He then proceeded to the rear of the south side thereof, around its rear and then turned along the north side of the truck, coming back on the walk when he met other pedestrians who were approaching the truck to pass it. Respondent stopped at a point on the north side of the vehicle, with his right foot on a line in front of the rear wheel and his back or side slightly in advance of an iron roller on the truck, which projected from the frame about three inches beyond the outer line of the rear wheels. While in this position the truck started forward, the rear wheel ran upon respondent's right foot, the iron roller struck his back or side and he fell, suffering an injured foot and a fracture of his right upper leg bone.

Appellant McCormick, an employee of the lumber company, had delivered a load of lumber on this truck a short time before the accident in question, by backing his truck through the gate and dumping the lumber within the premises. He had then driven the empty vehicle through the opened gate to the point where respondent saw it standing, brought it to a stop, applied the brakes and, leaving the engine running, climbed down from the cab on its left or north side to gather up ropes trailing behind, with

which the load had previously been secured. He passed around the front end of the truck and, having gathered and placed the ropes on the truck on the south side thereof, returned around the front of the machine, climbed into the cab on its north side and prepared to start forward. He first looked back to the rear on the left or north side, and saw people standing on each side of the truck but saw no one near it at that time. He then heard a man in the street, with a whistle, who said, "Are you all ready?" to which HcCormick said, "Yes", whereupon the former blew his whistle and stopped traffic on Broadway, allowing Mc-Cormick to go forward. On hearing an outcry he stopped his truck after going only six or eight feet, and observed respondent on the walk near the gutter, injured.

In addition to these undisputed facts the following testimony was given:

Called by plaintiff under section 2055, Code of Civil Procedure, McCormick said: "The man that swung a flag was for MacDonald and Driver; he asked me if I was all ready and I said 'yes', and he blew his whistle and stopped traffic and I started." He also testified: "This man who told me to come ahead was the flagman they had there. . . . There were quite a few automobiles and streetcars on the street at that time, and I was watching those at the time I started, but there was nothing to concentrate my attention out in the street at the time I released my clutch. . . . There was a car coming there, but he had stopped them; the flagman had stopped them. . . . I had delivered lumber at this place several times before and this man that told me to come ahead in the street had been there before and had given me instructions of that kind before. . . . When I got out to roll up the rope I didn't see Mr. Withey, the plaintiff in this action. I looked back just a second or so before I started the truck and there were people on each side of the sidewalk that I saw."

Mrs. Addie Lee testified that she was on the sidewalk going south and was standing by the railing on the north side of the truck when she first saw respondent standing in front of her, to her right; that she had to pause because the truck was in the way and was trying to get through, and people were in the way; that "there were no guards there on the pedestrian walk nor was there any noise or

warning given of this truck moving". She also testified: "When I first saw Mr. Withey he was not close to the body of the truck; the body extended. . . . The first thing I saw of Mr. Withey was when he was almost directly in front of me and on the same side of the truck that I was on."

Miss Joyce Lee testified she was standing beside Mrs. Addie Lee, her mother, and saw Mr. Withey there just in front of them, facing north, and that then the truck started. "There didn't seem to be any warning given; it happened so sudden I didn't notice anyone there by the truck who made any statements that the truck was going to move or anything of that sort. I didn't hear anyone state that the truck was going to be moved."

Miss Vida Perrin testified that she followed behind respondent around the rear of the truck and to the sidewalk on the north side. "There was such a crowd there, he went to go through some women—and he couldn't get through, and I heard someone call from the street . . . 'All right, Mac,' and with that the truck started forward and it struck Mr. Withey in the back. . . . When I got up to the truck there were no gates there—absolutely nothing —nor warning—nothing. There were no flags—no men with flags to warn us, or who did warn us. . . . There was no warning whatever. . . . Before any movement of the truck was made at all, I did hear a man from aways down the street yell, 'All right Mac,' but did not see him; I couldn't see him, but I heard that. Right instantly he said that, the truck shot forward." The witness further testified: "As I came up to the truck and looked over it, I saw several women standing in there, facing toward us. . . . It was full of people then; just simply full of people. . . . He [Mr. Withey] was facing kind of through these people that were crowded in there. . . . Many trying to get through, crowded up. . . . Just prior to the time Mr. Withey was struck he put his hands up to go through the people, like that (indicating). That is the position he was in. To get through these people that were standing, there was such a crowd, and just as he was in that position, just like this, this truck came forward, and one of the rollers struck him there and twisted him right around this way. . . . I did step back out of the way. I was sideways to the truck. I could see the truck was going to hit him; I

could see him; he had his back to it. . . . He just got there and was aiming to move to go through. You could not move; you could not step, because there were too many people there. He was there a second, trying to get through those people, when this thing went forward. He wasn't walking, like the crowd was there (indicating); he faced the crowd; that is why he could not get through.''

Respondent testified that when he came up to the truck he glanced at it and saw it was empty: ''Noticed there was no driver on the seat, so I just went to go with the crowd around the rear end of the truck. . . . I was next to the truck; people were going south on the west side, of course, and as I came around the other side, I came over to go through on the right hand side, of course. That is, on the north side, because the crowd was so thick coming this way—coming south—that I couldn't get through. So I hesitated there for, I don't know how long, a second or two perhaps, and the next thing I knew I was caught. . . . As I hesitated there momentarily before proceeding northward there were as many people standing in the pedestrian way as could get in; they were standing and they were going back and forth. I heard no warning, absolutely none, before that truck started. I did not know the truck was going to move.'' On cross-examination he testified: ''I had previously been in the lumber business and as I came up there I recognized that as being the usual lumber truck, . . . and saw that it had no lumber on it and assumed, of course, that the truck had discharged its load of lumber in the building and was headed out into the street. . . . At the time I could see right over the top of the truck without any difficulty. . . . I did see a lot of people coming down this covered-over passageway coming towards the truck and towards me. . . . I walked around the rear of the truck. I was right next to the truck as I made this trip around it. . . . Then I hesitated there a little bit, I presume a second or two or three, expecting to go on north as soon as I could get through. . . . I do not recall that anyone came in contact with me at this time at all. I didn't remain in any position any time; I was on the move, and I perhaps hesitated there a few seconds. At the time I was in that position I didn't stop to think about that I was in front of the wheels of that truck; there was no driver on the truck. No thought

as to the position of the wheels of the truck was on my mind at the time, so far as I recall. . . . But I assumed that they were protecting pedestrians there. I relied upon them to handle the truck in such shape as to protect the pedestrians. I intended to look out for myself; I went along in the pedestrian place provided, attending to my business, just like the rest of the people. . . . It was when I encountered the truck that I arrived at the conclusion that there was no driver there. I don't think I ever looked again at the truck seat to see whether the driver was there or not. I may have looked, I may not; I could not say; I don't know. I assumed that the driver was on the seat when the truck started up; I didn't know it. I didn't see anyone with a flag out in the street there, nor did I hear that man say to the truck driver, 'Are you all ready?' I did not hear a man out there in the street blow a whistle."

The foregoing comprises the substance of all the evidence offered by plaintiff when he rested his case, and it has been so stated at length because of its vital importance in considering the subsequent rulings of the court on motions for nonsuit made by each group of appealing defendants.

■ Upon resting his case by plaintiff, defendants Hammond Lumber Company and McCormick moved the court for a nonsuit on the grounds that the evidence showed as a matter of law that plaintiff was guilty of contributory negligence, and that the evidence showed no negligence on the part of the lumber company and McCormick; also that the evidence was insufficient on the question of negligence of such defendants to permit the case to go to the jury. Defendants MacDonald and Driver made a motion for nonsuit on the same grounds as above stated and the additional ground that there was no showing of any duty owing to plaintiff on the part of those defendants. Both motions were denied, and the orders denying them are assigned as errors of law on this appeal.

The motion for nonsuit of defendants Hammond Lumber Company and McCormick was properly denied. Under the rule of *respondeat superior* the company was responsible for acts of negligence of its employee, McCormick, committed while acting within the scope of his duties as such employee; and the evidence clearly presented a case of at least *prima facie* negligence on the part of McCormick, the

driver who was in control of and operating the truck at the time of the accident, which would be sufficient to support a finding of negligence in the absence of explanation showing that his operation of the machine and the ensuing injury was not due to his neglect or want of care. From the evidence relating to respondent's acts and conduct and knowledge just before and at the time of the accident, it cannot be said that, as a matter of law, he was guilty of negligence which proximately contributed to the happening of the accident. Those facts, as revealed by the evidence, peculiarly presented a case wherein the jury should determine whether as a matter of fact the respondent was negligent as pleaded.

The motion of defendants MacDonald and Driver for nonsuit should have been granted. At the close of respondent's case there was not even a scintilla of evidence that these appellants had any right to control the movements of the truck, nor that they or any of their agents or employees exercised or attempted to exercise any control at the time of the accident over its movements. Aside from the fact of presence of the truck on the premises under the control of these appellants as constructing contractors, and the signaling of the man in the street, no relationship at all was shown to exist between the owner and operator of the vehicle, on the one hand, and the contractors on the other, except that by inference it might be that of buyer and seller of the lumber delivered from the truck. Assuming that the man in the street was an employee of such appellants, there still appears a total lack of attempt on his part to direct or control the movements of the truck. His inquiry, ''Are you ready,'' or his statement, ''All right, Mac'', simply carries the implication that he was endeavoring to ascertain if the driver of the truck was ready to proceed into the street so that he in turn could stop traffic to permit such movement. This act still left McCormick, the driver, in exclusive control of the movements of the truck, and by no reasoning or inference could the act of the man in the street be considered as an exercise of control over the truck by his employers, MacDonald and Driver.

Nor was there any evidence upon which could be predicated any duty on the part of the above-named appellants toward respondent which was not discharged or not brought into

question here at all. ■ To a pedestrian using the fenced-in sidewalk in front of the premises on which appellants were constructing a building, the latter owed the duty of so conducting the operations of construction as not to cause injury. This duty, however, did not extend to and include the acts or operations of others over whom they had no control but who were, in the nature of things, independent actors. In Thompson on Negligence, section 3, it is stated: "An essential ingredient in any conception of negligence is that it involves the violation of a legal duty, which one person owes another,—the duty to take care, for the safety of the person or property of the other; and the converse proposition is that, when there is no legal duty to exercise care, there can be no actionable negligence." This rule does not include care for the safety of persons against negligent acts of others over whom no control or right to control exists. It does not require, in a situation such as is herein presented, that the building contractor shall provide personal guardianship to each pedestrian passing along a public walk in front of the premises.

■ It 'is alleged in the complaint herein that "defendants gave no notice or warning of any kind or character to plaintiff or other pedestrians who were then and there using said sidewalk, that said truck would be moved". As viewed under the actual proofs herein, this allegation is in nowise connected up with any duty of the last-named appellants; but respondent nevertheless claims that these appellants were under duty to warn pedestrians of the intended movement of trucks entering and leaving their premises. There is no basis in fact or in law for such claim. That the evidence introduced by respondent shows that no warning was given by him to anyone of the movement of the truck does not demonstrate that these appellants were derelict in any duty to him. The duty of warning those near or approaching the truck of its intended movement rested solely in appellant McCormick, as operator and in exclusive control thereof. Under the facts alleged in the complaint and established by respondent's case, there appears no duty on the part of these appellants owing to respondent in respect to the movement of the truck, and therefore no duty to warn him of its movements. Hence there was no question of fact in respect to negligence on the part of these appel-

lants to be submitted to the jury. In 2 Cooley on Torts, third edition, page 1410, quoted with approval by the Supreme Court in *Johnstone* v. *Panama-Pacific etc. Co.*, 187 Cal. 323 [202 Pac. 34], it is said: "1. The first requisite in establishing negligence is to show the existence of the duty which it is supposed has not been performed. . . . 2. The duty being pointed out, the failure to observe it is to be shown; in other words, the existence of negligence." Herein, respondent entirely failed to show the existence of any duty to him on the part of these appellants in respect to either control or warning of movements of the Hammond Lumber Company truck; hence there could be no failure to observe duty in that respect and consequently no negligence on the part of these appellants.

Whether the error in denying the motion for nonsuit made by appellants MacDonald and Driver is to be held as reversible error herein depends on whether those appellants afterwards introduced evidence supplying the defects of respondent's proofs, thus rendering any error in denying the motion harmless, in accordance with the well-established rule in this state. (9 Cal. Jur. 564.) ■ For if it appears from all the evidence in the record that a case for plaintiff was made out, then the action of the court in refusing the nonsuit is not reversible error. (*Russell* v. *Pacific Can Co.*, 116 Cal. 527 [48 Pac. 616]; *Carter* v. *Canty*, 181 Cal. 749 [186 Pac. 346].) After the order denying the motion was made, appellant McCormick was called "on behalf of defendants" and examined by his counsel and cross-examined by respondent's counsel. Then three other witnesses were called "on behalf of defendants" and examined first by counsel for MacDonald and Driver. Inasmuch as appellants Hammond Lumber Company and McCormick have assigned insufficiency of the evidence to support the verdict and judgment herein, both that question and the one above stated in respect to the nonsuit order may be determined by a summarized statement of defendants' evidence.

In addition to testimony which he gave when examined by plaintiff under section 2055, Code of Civil Procedure, appellant McCormick, called on behalf of defendants, testified: "They had a man out in the street to flag the traffic. We always stopped the truck in front of the building and this flagman would go out and flag the traffic so that we could

bring the truck in. They have a man on each side to hold back the traffic until I could drive in. I mean there was a man on each side of the entrance to the driveway and sidewalk where the pedestrians walked on the sidewalk; there was one man on each side. These men were there that day when I took the load in, but I did not know who they were; I never did know. All jobs have them. . . . There was a third man in the street. These men did take up their positions that day at the time I proceeded to back my truck into the building. . . . When I drove my truck forward there was a flagman on each side. There was one standing with his arms across the sidewalk on each side of the truck. . . . These two flagmen were in position while I was doing that [rolling up the ropes], and then I got back in the cab. . . . I looked back and there was nobody around the truck at all, everything clear; so the man out in the street—there was a flagman out in the street with a whistle; so the man out in the street says, 'Are you all ready?' I says, 'Yes,' so he says, 'All right,' and blew his whistle and stopped the traffic and I started out. . . . At the time I looked back— before I moved the truck—the two flagmen were there on either side of the truck." On cross-examination he testified: "I saw these flagmen there; I think they were two Mexicans; I am not sure. One of these Mexicans is in the courtroom. He was there with a flag at that time; I am positive of that. He was on the south side but I couldn't swear he had a flag. . . . I looked out of the side first, and then this man out in the street said, 'All ready,' and I saw everything was clear so I went right ahead at that time. I was not looking backward when I released the clutch so the truck could move forward. . . . When I looked out of my cab on the left side I did not say anything to the flagman that was there on the sidewalk. . . . As to how close he was to the truck . . . he was about 9 or ten inches. . . . I did not see anyone there. . . . Not in between the flagman and the truck. . . . From the time I looked back until I started the truck was about a second; perhaps a second or two seconds; long enough for the man out in the street to stop the traffic. . . . When I looked back this man around in front says, 'Are you all ready?' and I said 'yes', and he blew his whistle and stopped the traffic and I started up; so I never looked back again."

The witness Robert Washington, called on behalf of defendants, testified that on the day in question he was working on this construction job; that he flagged traffic to permit the truck to back in with its load, after which he delivered his flag to the foreman. He did not see the accident.

The witness H. B. Nyce, called on behalf of defendants, testified that he was foreman for a subcontractor on the job in question; that while awaiting a truck he expected he saw the lumber truck back in, unload and pull out; that when it pulled out he stood outside the door on the walk with his arms out, his back to the truck, alongside a flagman on the north side of the truck; that there was a flagman on the south side and that the two flagmen had red flags.

The witness Vermudez, also called by defendants, testified that he saw the truck when it went away; that he was called to clear the unloaded lumber and take it over to the carpenter; that he was holding the people back on the south side so they could not pass behind the truck; that he stopped about four or five people that were trying to pass; that he did not have a flag; no one told him to go there; that there was no flagman then on the south side; that "about four people passed; two of them passed and three remained; this gentlemen, who was the one that was hurt, and two ladies that did not pass; . . . I saw Mr. Withey at the time he passed around the rear of the truck; that was when I went ahead to stop the people, because he was going ahead of two ladies. . . . There was one person stopping people at the other door, that is on the north side. . . . I did see Mr. Withey when he made a movement to pass but the truck caught him. . . . He was trying to go to the side, and at the time he went this way to move his body to the left, the roller of the truck caught him. . . . Then he fell on about half of the sidewalk, and the wheel passed over his leg."

The foregoing comprises the substance of all the testimony on behalf of defendants on the subject in question. In rebuttal plaintiff called a witness, Lowrey, who testified he was timekeeper for appellants MacDonald and Driver on this job; that he saw the truck moved out but did not see the accident; that he was there right after the accident;

that at the time there were no flags or sticks with red cloth tacked to them; that after the accident he purchased red cloth and cut it in strips for flags; that Vermudez was a laborer on the job, not a flagman; that he, Lowrey, was standing inside the gate with his back to the truck, and did not see Nyce or Mr. Withey at the time the latter was struck.

Miss Joyce Lee, being called in rebuttal, testified that she did not observe anyone spread his arms across the pedestrian way immediately before the accident.

It is clear from the foregoing statement of the evidence introduced by them that appellants MacDonald and Driver have not waived any benefit of error in the ruling on their motion for nonsuit by reason of supplying defect in proofs of respondent in respect to the duty of those appellants to respondent in connection with any control or warning of movements or operation of the truck; hence the denial of their motion must be deemed prejudicial and constitutes reversible error. The evidence relating to the conduct and acts of Vermudez and Nyce does not furnish a basis for liability of these appellants. Vermudez, a laborer, while distributing lumber in the course of his duty, voluntarily attempted to prevent pedestrians from entering the premises and going around the rear of the truck. Nyce, who was not a servant or agent of these appellants, likewise attempted to hold the crowd of pedestrians back so that the truck could be free to move, the witness stating that he was expecting a truck of his own to enter with materials. The most reasonable conclusion to be drawn from this evidence relating to flagmen is that appellants at times sought by the use of flagmen to protect and expedite their operations from the onrush of pedestrians, rather than to offer or furnish protection to the pedestrians. Such evidence does not support the claim that these appellants had, or attempted to exercise, the right to control the movement of the truck in question or that they were charged with the duty of protecting pedestrians on the sidewalk from the dangers inherent in the moving of trucks into and out of the premises. On the comprehensive statement of the facts so revealed it likewise follows as a matter of law that the verdict and judgment against these appellants is lacking in eviden-

tiary support, and the judgment against them must therefore be reversed.

This disposition of the appeal of MacDonald and Driver renders it unnecessary to review the numerous errors assigned by them in relation to the admission of evidence, giving and refusing of instructions and amount of damages, excepting only as the same are duplicated in the other appeal and must be reviewed and determined in considering the appeal of Hammond Lumber Company and McCormick, to which we now address ourselves.

The first point raised by the last-named appellants in their brief charges insufficiency of the evidence to establish negligence on their part. We have stated the testimony of witnesses at length to show that the question of whether or not there was negligence on the part of the driver of the truck was essentially one for the determination of the jury. Upon that evidence the jury made its implied finding of negligence. We cannot say that finding is not supported. The sufficiency of evidence to establish a given fact is primarily a question for the trial court and jury; and if there is substantial evidence to support the conclusion reached it is not open to review on appeal. "The rule is well settled that, when a verdict is attacked for insufficiency of the evidence, our power begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the jury." (*Comstock* v. *Morse*, 107 Cal. App. 71 [290 Pac. 108].) The evidence herein shows substantial support for the finding of negligence.

The second contention raised by these appellants is that the evidence shows that respondent was guilty of contributory negligence as a matter of law. Again we refer to the rather lengthy statement of evidence given above, to demonstrate that the question of whether or not there was contributory negligence on the part of respondent was essentially a question for the jury to determine. In *Cummins* v. *Yellow & Checker Cab Co.*, 127 Cal. App. 170 [15 Pac. (2d) 536], appears a correct statement of the rule applicable herein, in the following language: "Ordinarily, of course, the question of whether a plaintiff was guilty of contributory negligence is a question for the jury. It is a question of law for the court only where the facts are undisputed,

and only then when on those facts reasonable minds can draw but one conclusion.'' We cannot hold as a matter of law that the evidence herein establishes contributory negligence on the part of respondent. Such evidence reveals a peculiar and somewhat unusual case of conduct of the parties under the circumstances related, which required determination of the question of contributory negligence as one of fact, not of law, because reasonable minds might draw different conclusions from the facts or might view the facts in quite different light. The jury's implied finding on the plea of contributory negligence cannot, therefore, be disturbed.

 Appellants Hammond Lumber Company and McCormick next challenge an instruction of the court, given at the request of respondent, as follows: ''The driver of any vehicle upon a public highway, before starting such vehicle, shall first see that such movement can be made in safety, and if it cannot be made in safety, shall wait until it can be made in safety. If you find from the evidence in this case that the defendants, or any of them, in starting such truck upon the public highway, towit, Broadway Street, Los Angeles, California, did not first see that said truck could be started with safety, then the defendants or such of them as were responsible for the movement of the truck were guilty of negligence.'' They contend that this instruction by its terms imposed an absolute duty on appellants and ignored the rule that it was only ordinary care that was required of the driver in starting the truck. It appears patent that the first sentence in the above instruction is *verbatim* with the language of the first clause in section 130, subdivision (a), of the California Vehicle Act, and appellants complain because only a portion of the section was quoted in the instruction and without proper construction by the court, so that the jury would understand that only ordinary care was required of the driver and that he was not bound to see that such movement could be made with absolute safety. In addition, they contend that the section is not applicable to the facts herein.

Under the definition of ''public highway'' in the California Vehicle Act (section 21), the sidewalk in question and driveway across it into the premises where the building was being constructed were not public highways. Therefore

no statutory duty was imposed on the driver of the truck in question, in relation to respondent, by the terms of section 130 of the act. But the instruction in question does not mention that section, nor does it contain any statement that a violation of the duty to "first see that such movement can be made in safety" would constitute negligence *per se* or as a matter of law. After reciting the rule as to starting, the court instructed that "if you find from the evidence in this case that the defendants or any of them in starting the truck upon a public highway, towit, Broadway Street, Los Angeles, California, did not first see that said truck could be started with safety, then the defendants or such of them as were responsible for the movement of the truck were guilty of negligence". Considering the whole instruction together, it correctly states, in an abstract form, the duty of the driver of a vehicle, either on a public highway or a private driveway, to other persons under the general rule requiring every person to so conduct himself and so to use his property that injury will not result to others— *sic utere tuo ut alienum non laedas*—thus rendering him liable for his wrongful acts whether wilfully or carelessly done. This rule and maxim are embraced and defined in section 1714 of our Civil Code, which provides: "Every one is responsible, not only for the result of his wilful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person." The instruction complained of did not define "safety", nor did it inform the jury that only ordinary care was to be exercised by the driver in seeing if the starting could be made in safety, assuming that both he and others using the passageway exercised ordinary care. (*Inouye* v. *Gilboy Co.*, 115 Cal. App. 25 [300 Pac. 835]; *Ruperto* v. *Thomas*, 113 Cal. App. 523 [298 Pac. 851].) In this respect, and standing by itself, the instruction is faulty; but considering it along with other instructions given it does not appear that the jury was misled or likely to be misled to appellants' prejudice. In its other instructions the court correctly defined negligence, and charged the jury that defendants were under duty to use ordinary care in the operation of the truck, and further gave an instruction at the request of defendants as follows: "If you find from the evidence that the defendant McCormick, prior to setting his

truck in motion, looked to the rear and then saw no one in a position from which an injury would result by reason of the movement of the truck; and if you further find that the general contractors on the building then under construction furnished a flagman or flagmen to keep pedestrians clear of the truck while same was departing from the building under construction and control traffic in the street; and if you further find that one of these flagmen signaled the defendant McCormick to drive his truck off the sidewalk; and if you further find that in view of these circumstances, if you find them to exist, and such other circumstances as you may find surrounded the happening of the accident, that the defendant McCormick acted as any other reasonably prudent man would have done under the same or similar circumstances, then I instruct you that the defendant McCormick was not guilty of negligence, and, regardless of all other considerations in the case, your verdict must be in favor of the defendants McCormick and Hammond Lumber Company.'' Any omission of explanation or interpretation of the general language of the former instruction complained of was fully supplied by this instruction, and the literal statement of the rule in the former is sufficiently interpreted and explained by the latter. All the instructions, read together, as the well-known rule requires, show the law to be fairly and clearly stated in respect to the driver's duty, and hence any error in the instruction complained of is cured. (*Crooks* v. *White*, 107 Cal. App. 304 [290 Pac. 497].)

█ Appellants next assign the giving of the following instruction as error: ''If you find from the evidence in this case that plaintiff, by using ordinary care in proceeding in a northerly direction on the sidewalk on the west side of Broadway, and proceeding around the said truck standing on the sidewalk, and after passing the rear of said truck found himself in a place of danger by reason of the crowds of people then attempting to proceed southerly on said sidewalk, and defendants, in operating said truck, observed or could have observed that plaintiff was in a condition of peril, by the use of reasonable precaution or diligence, then it was the duty of defendants to so operate and drive said truck in such a manner as not to injure the plaintiff.'' It is contended that this instruction involves the attempted

statement of the doctrine of imminent peril, or last clear chance, without including a qualification that such position of peril was not occasioned by the negligence of the person claiming the benefit of such situation. With this view of the instruction we cannot agree. The doctrine of imminent peril, or last clear chance, is not reflected therein. It simply states that if plaintiff found himself in a place of danger by reason of the crowds of people then attempting to proceed southerly on the sidewalk, and if defendants, in operating the truck, ''observed or could have observed that plaintiff was in a condition of peril by the use of reasonable precaution or diligence, then it was the duty of defendants to so operate the truck in such manner as not to injure the plaintiff''. This is a fair statement of the duty of appellants arising on discovering the dangerous position of respondent, and of their duty to use ordinary care not to injure other persons. Appellants complain of the use of the word ''could'', asserting that the word ''should'' was the proper term. By using the word ''could'' the court confined the duty of appellants to the exercise of ordinary care in watching out for others who might be affected by a movement of the truck; whereas by the use of the word ''should'' the court would be imposing constructive knowledge upon the driver of that which he should have acquired by exercise of watchful care.

The giving of the following instruction is also assigned as error: ''If you find from the evidence that the defendants observed that people were crowding about said truck and that said truck could not in safety be started, or if the defendants could have observed, by the exercise of ordinary care, that said truck could not be moved in safety because people were crowding about the same, then it was the duty of the defendants not to move or start said truck.'' What has been said in respect to the previous instructions discussed applies to this instruction. It comprises a literal statement of appellants' legal duty to others on putting a truck into motion, and when read in connection with other instructions imposes the exercise or use of only ordinary care.

We have examined the assignments of error predicated on rulings on admission and rejection of evidence, being exceptions numbered 2, 9 and 11. In exception num-

ber 2 the question clearly called for a conclusion on a hypothetical premise. Furthermore, the ruling was harmless, because the jurors, in their own common knowledge, could find the answer sought by appellants. There was no error here. There was likewise no error in the ruling in exception number 9. Presence of flagmen on the sidewalk when the truck backed in could not be relevant or material to the question of the driver's use of care when later driving the truck out. Exception number 11 embraces the same proposition, and there was no error in the ruling. There was evidence before the jury that at times flagmen were stationed on the walk while trucks were going in or out of the premises, but such fact would not affect the driver's duty to exercise ordinary care in moving his truck. The fact that others were assisting or attempting to assist the driver in the safe movement of his machine would not relieve him of his primary and continuing duty to exercise care and prudence in its operation, so as not to injure others.

The judgment, as against appellants J. W. MacDonald and C. W. Driver is reversed and as to them the cause is remanded with directions to enter judgment in their favor. The judgment against appellants Hammond Lumber Company and L. J. McCormick is affirmed.

Craig, Acting P. J., and Desmond, J., concurred.