[Civ. No. 14804. Second Dist., Div. Two. July 13, 1945.]

PAUL TUDERIOS, Respondent, v. HERTZ DRIVURSELF STATIONS, INC. (a Corporation), et al., Defendants; THOMAS I. PETERSEN, Appellant.

Crider, Runkle & Tilson for Appellant.

Morin, Newell, Brown & Hamill and Harry M. Hunt for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff, after trial before the court with a jury, in an action to recover damages for personal injuries sustained by plaintiff and damages resulting from the death of his wife and minor daughter in an automobile accident, defendant Petersen appeals.

The evidence discloses these facts:

Defendant was engaged in the automobile business in Santa Barbara and he rented an automobile to Mr. T. K. Hasbruck. Mr. Hasbruck represented himself to defendant's manager as Gerald McCoy Brown and presented a Michigan driver's license issued in the name of Mr. Brown. Mr. Hasbruck signed the rental agreement ''Gearld Brown.'' So far as defendant or his manager knew, Mr. Hasbruck was in fact Mr. Brown. After renting the automobile, Mr. Hasbruck started to drive south toward Ventura on the coast highway. At about 7 p. m., after dark, while driving toward Ventura, he collided head on with a Plymouth coupe owned by plaintiff. The accident resulted in the death of Mr. Hasbruck, plaintiff's wife, minor daughter, and injuries to plaintiff.

On the morning of November 8, 1942, plaintiff, his wife and minor daughter at about 11 a. m. drove from Santa Barbara to Ventura. During the trip to Ventura they passed the point where the accident occurred. At this point the highway extends east and west, Santa Barbara being to the west and Ventura to the east. For at least two years prior to the accident the highway had been a three-lane type with the lanes marked by two white lines. The paved portion of the highway at the point of the accident was thirty feet ten inches wide and each lane was approximately ten feet wide. Plaintiff was thoroughly familiar with the highway and knew that it consisted of three lanes and that drivers were supposed to stay

in their extreme right-hand lane except when passing automobiles going in the same direction.

For at least a week prior to the accident repair work consisting of resurfacing the pavement had been in progress in the north two-thirds of the highway, that is, in the west-bound lane and in the center lane. The new surface was black and entirely obliterated the white line on the north side which divided the west-bound lane from the center lane for a distance of 3/10 of a mile beginning at a point 150 feet west of the point where the automobiles collided. Thus Mr. Hasbruck in driving in an easterly direction toward Ventura had driven only 150 feet of the area under construction and where the white line was obliterated, whereas plaintiff had traveled the entire length of the 3/10 of a mile less this 150 feet. This obliteration of the white line on the north side of the highway was temporary and resulted from the repair work; there being no intention to change the general three-lane character of the highway.

The west-bound lane was entirely opened to traffic throughout its length without obstruction thereon at the time of the accident. Plaintiff was driving in a dim-out zone with only small parking lights at the top of his fenders and he could see only nine or eleven feet in front of him. He drove in the west-bound lane on the north side of the highway watching the white line which divided his lane from the center lane to the point where this white line on his side ended. He then turned his car and moved over to the center lane, and after following the remaining white line on the south side of the highway, which line divided the east-bound lane from the center lane, he kept his car to the right of such line. While driving at a speed of about twenty-five miles per hour in the above described position on the highway, he collided head-on with the coupe driven by Mr. Hasbruck. Plaintiff, as he approached the point of the accident, or at the time thereof, was not passing any automobile going in his direction.

Defendant relies for reversal of the judgment on three propositions which will be stated and answered hereunder seriatim:

First: *Plaintiff was guilty of contributory negligence as a matter of law which proximately contributed to the accident*

*in that plaintiff (a) violated section 526(b)[1] of the Vehicle Code and (b) violated section 525[2] of the Vehicle Code and (c) was driving at an excessive and negligent rate of speed at the time of the accident.*

This proposition is untenable.

█ (a) Section 526(b) of the Vehicle Code is applicable only when the highway has been divided into three or more clearly marked lanes for traffic. In the present case the undisputed evidence discloses that the accident occurred on a strip of highway 3/10 of a mile long which was not divided into three or more clearly marked lanes for traffic, it only being divided into two clearly marked lanes for traffic. Hence it is evident that section 526(b) of the Vehicle Code has no application to the instant case.

█ (b) Section 525 of the Vehicle Code requires drivers on a public highway to drive on the right half and as close as practicable to the right hand curb or edge of the roadway.

It was a question of fact for the jury to determine whether or not from the evidence, in view of the dim-out restrictions and the fact the highway was under construction and so marked in the area and at the point where the accident occurred, plaintiff was driving upon the right-hand half of the highway and as close as practicable to the right-hand edge of the roadway. The jury having impliedly found that in view of the circumstances above related plaintiff was driving as

---

[1]Section 526(b) of the Vehicle Code reads thus:

"§ 526. Driving on Roadways Laned for Traffic. Whenever any roadway has been divided into three or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

(b) *(Driving in center lane.)* Upon a roadway which is divided into three lanes a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway ahead is clearly visible and such center lane is clear of traffic within a safe distance, or in preparation for a left turn, or where such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding and is signposted to give notice of such allocation."

[2]So far as applicable, section 525 of the Vehicle Code, reads:

"§ 525. Driving on Right Side of Roadway.

(a) *(Vehicle to be driven upon right half of roadway: Exceptions.)* Upon all roadways of sufficient width a vehicle shall be driven upon the right half of, and as close as practicable to the right hand curb or edge of, such roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.

(2) When placing a vehicle in a lawful position for, and when such vehicle is lawfully making a left turn.

(3) When the right half of a roadway is closed to traffic while under construction or repair.

(4) Upon a roadway designated and signposted for one-way traffic."

near to the right-hand side of the highway as was practicable, its finding will not be disturbed by this court. (*Jolley* v. *Clemens*, 28 Cal.App.2d 55, 66 [82 P.2d 51] ; *Shannon* v. *Thomas*, 57 Cal.App.2d 187, 197 [134 P.2d 522] ; *Mathers* v. *County of Riverside*, 22 Cal.2d 781, 784 et seq. [141 P.2d 419].)

(c)   It was likewise a question of fact for the jury to determine from all the evidence whether plaintiff was driving at an excessive rate of speed prior to and at the time of the accident, and having impliedly found that he was not, such finding is binding upon this court.

Second: *The trial court committed prejudicial error in instructing the jury as follows:*

*"If you find from the evidence that Thomas K. Hasbruck rented the Plymouth automobile which he was driving at the time he collided with the plaintiff's automobile from the defendant Thomas I. Petersen, the owner thereof, you shall find that said Thomas K. Hasbruck was using and operating said automobile at the time of said accident with the permission and consent of said Thomas I. Petersen, even though it may appear from the evidence that said automobile was rented by said Thomas K. Hasbruck in the name of Gerald Brown, and that said Thomas K. Hasbruck exhibited the Michigan operator's license of said Gerald Brown, and that said Gerald Brown did not accompany Thomas K. Hasbruck at the time of said renting."*

This proposition is also untenable. Defendant contends that since Mr. Hasbruck misrepresented who he was when he rented the automobile from defendant, defendant is not liable to plaintiff under the provisions of section 402[3] of the Vehicle Code. This contention we believe to be without merit. Section 402 of the Vehicle Code reads in part: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle . . . by any person *using or operating the same with the permission, express or implied, of such owner. . . .*" (Italics added.)

In the present case the undisputed evidence shows that de-

[3]So far as applicable, section 402 of the Vehicle Code reads:

"§ 402. Liability of Private Owners. (a) Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

fendant expressly permitted Mr. Hasbruck to take an automobile owned by defendant and permitted him to operate it. It is entirely immaterial as to the name of the driver of the car. The statute was designed for the protection of the public and places upon the owner of a motor vehicle the responsibility of ascertaining the character, ability and responsibility of the person to whom he intrusts his automobile. Mr. Hasbruck was the *very person* to whom defendant intrusted the possession of his automobile without any limitations as to its use. Since defendant had the opportunity of making such investigation as he deemed necessary to satisfy himself as to the identity of the person to whom he intrusted his automobile, he should not be permitted to escape liability to a third party because of any fraudulent misrepresentation made by the renter of the car to him.

Third : *The court committed prejudicial error in instructing the jury as follows:*

*"At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof."*

This proposition is also untenable. It was error to give the foregoing instruction. (*Rogers* v. *Interstate Transit Company,* 212 Cal. 26, 38 [297 P. 884] ; *Campbell* v. *City of Los Angeles,* 28 Cal.App.2d 490, 492 [82 P.2d 720].) However, in view of the fact that witnesses produced by plaintiff and defendant testified in detail as to plaintiff's acts and conduct prior to and at the time of the collision the erroneous instruction could not have influenced the jury's verdict, and therefore such error must be disregarded by us pursuant to the mandate of article VI, section 4½ of the Constitution. (*Rogers* v. *Interstate Transit Co., supra,* 39.)

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.

A petition for a rehearing was denied July 31, 1945, and appellant's petition for a hearing by the Supreme Court was denied August 30, 1945.