[Civ. No. 20781.   Second Dist., Div. One.   June 13, 1955.]

DORR STUART et al., Appellants, v. MELVIN LAWRENCE HARPER et al., Respondents.

William G. Junge and Hunter & Liljestrom for Appellants.

Joseph C. Radzik and Marlin H. Shirley for Respondents.

DORAN, J.—This action for personal injuries and property damage arose out of an automobile collision which occurred on the westerly slope of the so-called Kellogg Hill between Pomona and Los Angeles, on February 10, 1953, at about 11:30 p. m. Mr. and Mrs. Stuart filed the original complaint; thereafter a cross-complaint was filed by Mr. and Mrs. Harper. There was a jury trial which resulted in a verdict and judgment in favor of the Harpers and against the Stuarts in the sum of $7,700, from which the Stuarts now appeal.

As stated in appellants' brief, "Respondents (Harpers) were traveling from Pomona to Los Angeles. Westbound traffic goes over the crest of the hill, then goes on down to another area, then comes to a rise, and then goes down a second hill. . . . At the place of the accident the highway had a center divided line area and two westbound lanes separated by a single line. According to Mr. Harper's testimony, at the time of the collision Appellant's car was partly in both of the westbound lanes at an angle, and the lefthand side of Respondent's car came in contact with the lefthand

side of Appellant's side. When Mr. Harper first observed the Stuart automobile it was not moving.''

The respondents' version of the accident is that the Stuarts had been eastbound ''and were going uphill on Kellogg Hill when they began having mechanical trouble with their car. . . . then the Stuarts being unable to make it up the hill, coasted backwards making a semi-circle in an effort to turn around and go back to Los Angeles. In making this maneuver, they were in a position where they were headed in a general southwesterly direction at about a 30 or 45 degree angle with the traffic lanes with their car blocking the westbound traffic lane next to the center dividing strip at the moment the Harper's westbound automobile came over the crest of the hill in this same traffic lane, and after its brakes were applied, collided with the left rear (principally on the side) of the Stuart car with the right front of their own car. . . . The U-turn made by the Stuart automobile was made within 200 feet of the crest of the second hill and the crest did obscure visibility of westbound vehicles. Further, the U-turn was made across a dividing strip in violation of Vehicle Code, Section 525(c).''

Appellants present three issues, the first of which is that ''It was error for the trial court to refuse appellants' request to introduce Deputy Sheriff Jessup's notebook into evidence.'' It is appellants' argument that the question of liability turned on the question ''Did Appellant turn around at the intersection of Via Verde or did he back his car across the center dividing strip and attempt to proceed westerly in that manner?'' and that the cross-complainants' case depended largely upon alleged admissions concerning this matter made by Stuart to the officers.

Officer Jessup was questioned concerning notes made at the time, and the fact (admitted by Jessup) that part of the notations ''were somewhat lighter in appearance,'' which might indicate that the notes had been ''doctored'' after the event. Appellants contend that the noebook should have been admitted as impeaching evidence. In this same connection it appears that Mr. Stuart had been acquitted in a criminal trial at West Covina of a charge growing out of the same occurrence, for which reason appellants argue that the officers ''were out to 'get' Mr. Stuart because they had been rebuffed by the trial court's decision,'' and that Officer McArthur had stated, ''as far as I am concerned, you are guilty, and

you will take my advice and stay out of Pomona, because we have got your number." This was denied by the officer.

The trial court refused to admit in evidence the officer's notes in reference to the accident, saying: "You have read the entire thing in evidence." Appellants now argue that "If the trial court had permitted into evidence Officer Jessup's notes, and if upon examining them the jury had come to the conclusion that because of the dissimilarity between the light and dark penciled notes and because of the variation between his testimony about the sequence of securing the information and the way it was written down in the book, that Officer Jessup had made them at a different time, contrary to his testimony on the stand, the jury would have been justified in disregarding his testimony regarding the alleged admissions of Mr. Stuart." A part of these notes read, "Fuel failure, and let the vehicle roll backwards down the hill, then turned around by coasting." It was this latter notation, says appellants' brief, "which was lighter in appearance than the balance of the notes, as though written by a different pencil."

There is no merit in this contention. As stated by the trial court, the entire notes made by the officer were read into evidence, and Officer Jessup had admitted that a part thereof appeared "somewhat lighter in appearance," for which the officer could give no reason but stated that the entries were made with the same pencil. Appellants' assumption that the jury would have believed the Stuarts' testimony but for this refusal to admit the officer's notes in evidence, is not borne out by the record. As respondents' brief points out, "the case turned on several salient points long before Officer Jessup took the stand." Skidmark photographs, pictures showing damage to the automobiles, oral testimony and other evidence was before the jury, from which a reasonable conclusion could be reached that Mr. Stuart was in fault. In view of these facts, appellants can have sustained no prejudice from the trial court's exclusion of the officer's notes.

Appellants' contention that "It was error for the trial court to give California Vehicle Code, Section 542," which provides that "No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to, or near the crest of, a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within 200 feet," is likewise untenable. The respondents' brief correctly points out that there was

a conflict of evidence as to the exact point where Mr. Stuart attempted to turn around, that "The reason the officers could not specify the point of impact in relation to the second crest is because the accident occurred on an open highway at night and there were no signposts or other artificial objects in the immediate vicinity." From the photographs and other evidence disclosed by the record, the jury could and evidently did believe that the accident occurred "very close to the crest—close enough to be dangerous—and that the crest did obstruct the visibility of westbound drivers." The entire question resolved itself to one of fact, and the verdict of the jury is not without support. The giving of the instruction in question cannot be deemed prejudicial error.

It is further contended that "It was error for the trial court to instruct the jury that each party was entitled to the presumption of law that every person takes ordinary care of his own concerns and that he obeys the law." As respondents state, even "Assuming that the presumption instruction was academically erroneous, it would require a healthy imagination to perceive any prejudicial effect." The judge had correctly instructed the jury that the first issue to be decided was "Was either party negligent?" As already indicated, there were two widely varying versions and theories as to the conduct, movement and position of the Stuart vehicle, and the instruction in question was so worded as to benefit either or both parties. There were other adequate instructions as to negligence, contributory negligence, burden of proof, etc., and in view of the entire charge, the instruction given cannot be deemed prejudicial.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 11, 1955.