[Civ. No. 5000.   Fourth Dist.   May 18, 1956.]

ELMA B. JONES, as Administratrix, etc., Plaintiff and Appellant, v. JACK HENRY MAYNARD et al., Defendants and Appellants.

C. Ray Robinson, Thompson & Thompson, Eckhart A. Thompson and William B. Boone for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, Boyd & Taylor, Boyd, Taylor & Reynolds, Dubsick & Whalen and Bronson, Bronson & McKinnon for Defendants and Appellants.

GRIFFIN, J.—This is an action originally commenced by Sidney W. Jones, plaintiff and respondent (hereinafter referred to as plaintiff), against defendants and appellants Jack Henry Maynard, a truck driver of 33 years' experience, and Permanente Cement Company (hereinafter referred to as

the company), his employer, for injuries claimed as a result of being crushed by the wheels of defendants' tractor-trailer Diesel engine cement truck. A former trial by jury resulted in a verdict for plaintiff. The judge there presiding granted a new trial on the ground of insufficiency of the evidence. This action was justified on the conflicting evidence there produced.

After a second trial before another jury and judge a verdict was rendered in favor of defendants. The court granted plaintiff's motion for a new trial on three separate grounds: (1) Insufficiency of the evidence; (2) irregularity in the proceedings; and (3) errors in law. Defendants appeal from the order and plaintiff cross-appeals from the judgment under rule 3(a) of the Rules on Appeal. Subsequent to the trial Sidney W. Jones died and Elma B. Jones was appointed administratrix of his estate, and substituted as plaintiff herein.

About 7:23 a. m. on January 25, 1952, defendant truck driver arrived in Fresno with defendant company's truck which weighed approximately 68,000 pounds loaded with sacks of cement on a flat bed. It was about 48 feet long and the load was about 3½ feet high above the bed and covered with a canvas.

The truck had rearview mirrors 4 inches by 14 inches on each side of the cab. The Parrish Company's plant, to which the cement was being delivered, was fenced and located near the intersection of Maple Avenue and Thomas Street in Fresno. Thomas Street was about 100 feet wide, and an unimproved dirt public road running in an east-west direction passing by the company's buildings located on the south side of the roadway. There were no sidewalks or curbs. Although the weather was then clear it had rained the night before and the street was quite soft, muddy and full of chuckholes. The property buildings consisted of a frame building and a separate cement storage building sitting back on the company's property. A gate was provided in the fence where the passageway enters into the company yard. Plaintiff Jones had been employed by the Parrish Company for two days before the accident. His duties were to assist other men in unloading cement at the cement storage house. He arrived at the office before 7 a. m. and then left it and was awaiting the arrival of defendants' truck. In a few minutes the truck arrived and it was stopped on Thomas Street opposite the company shop about 18 feet out from a telephone pole which was located about 16 feet north of the

fence and shop. The testimony as to the exact position of the truck was in dispute. Maynard was awaiting the opening of the gate by an authorized dispatcher of the Parrish Company whose duty it was to open it. This was no part of plaintiff's duties. In the meantime, Maynard was untying the ropes on the canvas covering the cement and Jones came out of the yard and watched this operation. According to Maynard (called as an adverse witness), plaintiff followed him around the truck like "a puppy follows a child" and acted "in a sort of a daze . . . strangely," looking underneath the truck and in the cab and not saying a word or touching anything. He testified he knew there was something wrong with plaintiff. It was no part of plaintiff's duty to assist in this operation. Other trucks and employees' cars were subsequently parked nearby and to the rear of defendants' truck. Maynard further testified that about this time he and plaintiff were about 15 feet (this distance is in dispute) to the rear of the cement truck when plaintiff started walking in a westerly direction toward one of the parked trucks to the rear, and that Maynard left to go around the north side of his truck to start it because the dispatcher had given him the signal that the gate was open; that Jones had disappeared from his sight when he got in the cab; that he started the motor and it took 10 to 20 seconds to "build up" air in his Diesel engine, which causes considerable noise, and looked in both rearview mirrors, saw nothing that would interfere with his operations, put the truck in the lowest of its 15 gears and started forward at about one-half mile per hour; that he continued to look in the mirror; that after the truck had traveled about 70 feet and had started to turn into the gate he heard someone holler "Back up quick"; that he looked into his right rearview mirror and Jones appeared to be holding onto his truck with his left hand underneath, his body lying "along the wheels," his "head, from his hips or shoulder up was in front of the front dual wheels of the right" front axle; and that when he stopped the truck and commenced to back up plaintiff let go. Plaintiff was found in the tracks of those wheels, badly crushed. His hat was found a few inches from these wheels. Apparently there were no other eyewitnesses to the actual cause of the accident.

Jackson, another truck driver who had parked his truck to the rear of defendants' truck, testified he saw Jones in the office (shop) and later saw Maynard untying the ropes, and three or four men, including Jones, were standing between

the shop and the cement truck; that he went into the office and as he was walking out of the shop, the next time he saw Jones the cement truck was moving and Jones was under the wheel of the semi-trailer; and that he hollered for Maynard to stop and back up.

Another truck driver, Eichelberger, who was in the shop, testified he did not see Jones but saw his hat in the position indicated, just as the truck started to move. Another driver, Ham, testified he parked his truck about 8 feet to the south or to the rear of defendants' truck; that defendants' truck was about 8 feet north of the pole; that he went to the office waiting for defendants' cement truck to pull out; that just as he was coming out he noticed Maynard getting into the cement truck; that he got in his tank truck and he saw Jones dragging under the right front wheel of defendants' truck and it appeared to him that Jones was trying to keep his body in a north-south angle ''to keep it up with the wheel'' in a ''rolling type of motion.'' He noticed drag marks on the mud but did not hear the motor of defendants' truck start up.

An officer testified as to conditions there existing shortly after the accident and stated that Maynard signed a written statement (in evidence). It recites:

''. . . I started to untie the tarp cover. The victim was at the scene then but not helping. He was wandering around, acting like he was in a daze. I finished untying, doubled my ropes up and went to see if the gate to the shed was open. I came back and got into my truck, I didn't see the victim at all at this time. I shifted into low gear and started forward, approx. ½ m.p.h. Somebody hollered and I put on my brakes and looked in my mirror and saw a person lying under the right front wheels on the Semi-trailer. Someone hollered 'Back up quick' so I did about 3 feet. I believe someone of the employees saw him fall but they would not tell me. I just don't know what happened.''

The witness Ham signed a similar statement and said Jones was standing approximately 15 feet south of the cement truck when he walked out to get into his truck, and the cement truck started to pull forward and later he saw Jones struggling ''to get from underneath the wheel . . .''; that he ''didn't see Jones from the time he was standing 15 feet from the truck until he was under the wheel.'' Other witnesses added nothing respecting defendants' negligence and the claimed contributory negligence of plaintiff. Portions of this testimony,

taken at the former trial, were allowed in evidence as impeaching their testimony. We perceive little, if any, material variance in the stories. Plaintiff endeavored to testify but it was apparent from his testimony that he did not remember any of the facts surrounding his injury.

Defendants' motion for a nonsuit was denied. It is their claim that under no reasonable or rational theory was it shown that they were negligent; and that it did not show how Jones got under the wheel or that any negligence of Maynard put him there. From the evidence the jury was quite justified in finding in favor of defendants, and had the trial court denied the motion for a new trial it might well have been sustained on appeal. (*Tuttle* v. *Crawford*, 8 Cal.2d 126 [63 P.2d 1128]; *Stuart* v. *Harper*, 133 Cal.App.2d 550 [284 P.2d 505]; *Tuderios* v. *Hertz Drivurself Stations, Inc.*, 70 Cal.App. 2d 192 [160 P.2d 554]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 P. 884]; *Speck* v. *Sarver*, 20 Cal.2d 585 [128 P.2d 16].) However, this is not the question before us. The trial court, apparently with some reluctance, granted a new trial believing that there was some substantial evidence upon which the jury could return a verdict in favor of plaintiff and that the jury was erroneously instructed as to the law, which error may have been the turning point which led the jury to believe that negligence of defendants had not been established.

At defendants' request the court gave an instruction (No. 48) in the language of B.A.J.I. Number 135, reciting:

"At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof."

It is admitted that this instruction may have been applicable to the plaintiff, at the outset, because of his loss of memory of the facts, but plaintiff contends it was not applicable to defendants who were present and testified to the surrounding facts, citing *Rozzen* v. *Blumenfeld*, 117 Cal.App.

2d 285, 287 [255 P.2d 850] ; *Ford* v. *Chesley Transp. Co.,* 101 Cal.App.2d 548, 552 [225 P.2d 997] ; *Jones* v. *Scurlock,* 96 Cal.App.2d 201, 203 [214 P.2d 599] ; and *Keller* v. *Key System Transit Lines,* 129 Cal.App.2d 593, 600 [277 P.2d 869]. In the latter case the trial court granted a new trial, holding it to be prejudicial error to give the same instruction where the party to the action is living and all circumstances of the action are proved. It was there held, where plaintiff had no recollection of the happening of the accident it was proper to instruct the jury in the light of this presumption where there is nothing in plaintiff's testimony that is irreconcilable with such presumption. And quoting from *Ford* v. *Chesley Transp. Co., supra,* said " 'the presumption may not be relied upon by a party who can and does produce complete and explicit evidence as to his conduct in the premises.' " (See also *Paulsen* v. *McDuffie,* 4 Cal.2d 111 [47 P.2d 709] ; *Tuttle* v. *Crawford,* 8 Cal.2d 126 [63 P.2d 1128].)

In support of the instruction given see B.A.J.I. Instruction Number 135, page 314, footnote H; Indices to Probability, Palmer, page 160, chapter 10; and Stanford Law Review, volume 2, page 559.

Assuming, therefore, from the authorities cited, including *Tuderios* v. *Hertz Drivurself Stations, Inc.,* 70 Cal.App.2d 192, 198 [160 P.2d 554], that it was error to give such an instruction as applicable to defendants, and that a reversal was justified on this ground alone, we must then determine whether the facts and allowable inferences to be deduced therefrom justify the court's conclusion that there was sufficent evidence to again submit that issue for another trial. The question is a close one.

The main evidence of defendants' negligence comes from the testimony of the defendant truck driver, called as a witness for plaintiff. If we accept his testimony, as given at the trial, it might well appear that he was not negligent in failing to look and to take adequate precaution in the operation of his truck, under the circumstances related. Opposed to that testimony are certain facts and inferences which the jury might be entitled to draw from the evidence. Thomas Street was a public roadway and was extensively used by the employees and vehicles of the Parrish Company. On the day indicated it was wet, muddy and slippery. It might well appear that Maynard knew that plaintiff had been in and around the cement truck and had exhibited an unusual curiosity about it; that he was acting strangely and was not

in full possession of his faculties immediately preceding the time when he entered the truck to start it; and that he knew plaintiff was in the vicinity of the right rear of the truck. The circumstances indicate that plaintiff must have been alongside, had a hold on or under the truck when it started, and was either knocked down by it or plaintiff slipped and fell and was dragged about 18 to 30 feet; that Maynard could not see over or around his truck except by the use of mirrors; that had he so looked before starting the truck he would or could have seen plaintiff in a dangerous position; that he did not look, or if he did he did not see that which was apparently in his vision. It is conceded that no horn was sounded by the truck driver. ▪ Section 671, subdivision (b) of the Vehicle Code provides: ''The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. Such horn shall not otherwise be used.''

The trial court erroneously refused this proffered instruction, with the statement to the effect that it was because the starting of the Diesel motor was sufficient warning. This was a question of fact for the jury to determine. (*Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 37 [286 P.2d 21].)

Notwithstanding defendants' testimony, plaintiff offered in evidence Maynard's statement made to the highway patrolman which might indicate that he did not look in the mirror before starting the truck but did so later when his attention was called to the fact of plaintiff's presence in the vicinity of the rear wheels of the truck. Section 543 of the Vehicle Code provides:

''No person shall start a vehicle stopped, standing or parked on a highway nor shall any person back a vehicle on a highway unless and until such movement can be made with reasonable safety.''

See also *Withey* v. *Hammond Lbr. Co.*, 140 Cal.App. 587 [35 P.2d 1080]; *Frederiksen* v. *Costner*, 99 Cal.App.2d 453, 458 [221 P.2d 1008]; *Rednall* v. *Thompson*, 108 Cal.App.2d 662, 667 [239 P.2d 693]; *Boots* v. *Potter*, 122 Cal.App.2d 927, 935 [266 P.2d 176, 39 A.L.R.2d 1]; *Lebkicher* v. *Crosby*, 123 Cal.App.2d 631, 635 [267 P.2d 361]; and *Soda* v. *Marriott*, 118 Cal.App. 635, 640 [5 P.2d 675]. While the jury was, and the trial judge might well have been justified in not believing this fact or inference, this court, on appeal, is not so authorized. (*Brinkerhoff* v. *Ferguson*, 107 Cal.App.2d 175, 176 [236 P.2d 588]; *Mazzotta* v. *Los Angeles Ry. Corp.*, 25

Cal.2d 165, 169 [153 P.2d 338]; *Richardson* v. *Ham*, 44 Cal. 2d 772 [285 P.2d 269]; *Armenta* v. *Churchill*, 42 Cal.2d 448, 455 [267 P.2d 303].)

The question of plaintiff's claimed contributory negligence, although somewhat convincing to us and might well have justified a denial of a motion for new trial, was one of fact and not of law. (*Hoppe* v. *Bradshaw*, 42 Cal.App.2d 334 [108 P.2d 947].) In this connection the trial court properly gave defendants' instruction in the language of section 596.5 of the Vehicle Code relating to unlawful riding. The theory that plaintiff was endeavoring to ride on some portion of the truck, which was not intended for use of passengers, to the cement storage room is fully supported by the evidence. Other given instructions about which plaintiff complains were proper in substance. Those of plaintiff's which were refused were sufficiently covered by other instructions. There was a sufficient compliance with section 658 of the Code of Civil Procedure conferring jurisdiction on the court to hear and determine the motion for new trial on the grounds here indicated. The photographs received in evidence were properly admitted. However, the trial court improperly refused to admit certain photographs offered by defendants in evidence upon the showing made. No error appears in the court's ruling in relation to plaintiff endeavoring to impeach his own witness Ham.

It appears to us that the trial judge in the first trial properly held that he was justified in granting a new trial on the grounds of insufficiency of the evidence. It further appears to us that there was convincing evidence of contributory negligence on the part of plaintiff which justified the jury in the second trial in returning a verdict in favor of the defendants and that it was not misled, to plaintiff's prejudice, by any erroneous instructions given by the trial court. ■ However, the rule of law as to the power of the trial court to weigh the evidence is different from the power of this court on appeal, in ruling on an order granting a new trial. (20 Cal.Jur., p. 117, § 75.) If a new trial is had, it should be presented under proper instructions.

The order granting a new trial is affirmed. Plaintiff's cross-appeal from the judgment is dismissed.

Barnard, P. J., and Mussell, J., concurred.

The petition of defendants and appellants for a hearing by the Supreme Court was denied July 11, 1956.