[Civ. No. 12785.   Second Dist., Div. One.   Jan. 30, 1942.]

MARY R. PROVIN et al., Plaintiffs and Appellants, v. CONTINENTAL OIL COMPANY (a Corporation) et al., Respondent; A. P. DANAHER et al., Defendants and Appellants.

418

Swaffield & Swaffield, Kenneth Sperry and Joseph E. Madden for Plaintiffs and Appellants.

Joseph A. Ball, Frank C. Charvat, Edmund Nichols, Jr., Anderson & Fogarty, Joe Crider, Jr., and Clarence B. Runkle for Defendants and Appellants.

George L. Greer and James V. Brewer for Respondent.

DRAPEAU, J. pro tem.—U. S. Highway 101 in California runs northerly and southerly for the whole length of the state, and follows approximately the shore line of the Pacific ocean. In southern California it divides into two routes, the most westerly one being called U. S. Alternate 101.

It was on U. S. Alternate 101, between the cities of Long Beach and Seal Beach, that a collision between an automobile and a loaded oil tank and trailer occurred, which caused the death of two persons and serious injuries to two others. And it is with regard to the damages alleged to have been caused by this collision, and the resulting trial of these issues in the superior court that the appeals in this case have to do. Hereafter we will refer to Alternate 101 as the coast highway. Also, while the coast highway at this point runs southeasterly and northwesterly, we will hereafter speak of it as running north and south.

A short distance north of Seal Beach there was located a private road, leading in an easterly direction from the coast highway. At this intersection the level of the coast highway and the private roadway was a few feet above the surface of the adjoining ground. And at this intersection the coast highway was divided into four traffic lanes. Being outside of any specially restricted speed zone, traffic proceeded at a rapid rate of speed.

At the time of the collision owners of the land east of the highway, and upon which was located the private road, were the defendants, Fred H. Bixby Company and Continental Oil Company. Fred H. Bixby Company was the owner of the fee and lessor of an oil lease to defendant Continental Oil Company, as lessee. Oil had been discovered and was being produced upon the leased premises. In the lease was a covenant permitting the lessor, at its option, to take its royalty in oil rather than in cash. Prior to the collision, the lessor had exercised this option, and had contracted with defendant, Olympic Oil Company, to purchase the royalty oil which the defendant, Continental Oil Company, was obligated under the lease to deliver. Hereafter, for the sake of brevity, we will refer to these parties as Bixby, Continental, and Olympic.

Upon the exercise of the option to take it in kind, it became necessary to provide facilities to load the oil at some point upon the real property, so that it might be transported by truck to the refinery of Olympic. Therefore, there was constructed upon the north side of the private roadway, at a point about 70 feet from the coast highway, a loading rack, with pipes leading to it from Continental's oil tanks. At the loading rack these pipes were equipped with valves. In order to load tank trucks and trailers, the drivers thereof would turn from the coast highway into the private roadway, stop at the loading rack, open the valves to turn on the oil, and fill the tanks.

Olympic contracted with the defendant, A. P. Danaher, to truck the oil from the loading rack to Olympic's refinery near Long Beach. Mr. Danaher owned the tank truck and trailer which figured in the collision, which we will hereafter call the "tanker." The defendant, Herbert F. Yohann, was the driver of the tanker.

The collision occurred about 8:30 p. m. on November 17, 1937. The automobile was en route from San Diego to Long Beach. In it were four people; two couples, husbands and wives, returning to their homes in Long Beach from a day's outing. The two men were riding in the front seat of the automobile and the two women were in the back seat.

The defendant truck driver, Herbert F. Yohann, had come south from Long Beach, on the coast highway, driving the tanker. Reaching the intersection of the private roadway,

he made a left turn easterly, drove to the loading rack, and filled his tanks.

Another tanker belonging to the defendant, Danaher, was parked on the coast highway. The driver of this tanker was talking to the defendant driver while the loading was going on.

When the tanker driven by Yohann was loaded, he backed it out into the coast highway, while the other driver was out there signaling with a flashlight to traffic coming in both directions. In backing out into the highway, the tanker described a quarter circle, so that when the backing was completed, it stopped, headed south on the coast highway, partly on the shoulder and partly on the most easterly fourth lane. In other words, at the conclusion of this backing process, the tanker was on the east side of the coast highway, and it was headed in the opposite direction from Long Beach, where it was to deliver the oil to the refinery.

Then the tanker started forward, making a right turn, which, if it had been completed, would have been a complete U turn and would have caused the tanker to have been headed north on the coast highway. While this last turn was in progress, the other driver was still signaling with his flashlight. The U turn was not completed, because as the tanker was making it, and just as the front of the tanker reached the center of the highway, the automobile driven by one of the decedents, traveling along the coast highway northward from Seal Beach to Long Beach, ran into the forward truck of the tanker, with the results above described.

In due time this action was brought by plaintiffs, surviving widow and parents of the decedent who was riding in the front seat of the automobile, and who was not driving.

Continental and Olympic were joined as defendants upon the theory that they were negligent in locating and maintaining the loading rack on their premises, in that the loading rack was so planned, located, and constructed that it was necessary for drivers of tank trucks to back out from the private roadway and then make a complete right hand turn on the coast highway. The driver and truck owner were joined on the theory of negligence and *respondeat superior*.

A jury was impaneled and sworn to try the facts, and the case proceeded to trial. At the close of plaintiffs' case, the trial court granted a motion for a nonsuit as to the defendant,

Continental. When the case was finally submitted to the jury a general verdict in favor of all of the defendants was rendered.

Thereafter, motion for a new trial was granted, except as to the defendant, Continental.

All of the parties, except Continental, have appealed.

The plaintiffs appeal from a judgment of nonsuit in favor of Continental; all of the other defendants, except Continental, appeal from the order of the superior court granting a new trial.

All of these appeals can be decided upon a determination of one of the two following interrogatories.

1. In maintaining the loading rack upon the premises of Bixby were Continental or Olympic or Bixby guilty of negligence which was the proximate cause of the injuries complained of by plaintiffs?

2. Did the trial court abuse its discretion in granting the motion for a new trial?

Firstly, with reference to the maintenance of the loading rack: It is conceded by all parties that there is no question of *respondeat superior* involved in the relationship of any of the parties to the action, except as between the truck owner and his driver.

Therefore, the only theory under which the defendants, Bixby, Continental, or Olympic, can be held responsible in damages, is that they agreed upon, consented to, and constructed and maintained, the loading rack upon the Bixby lands; and that in so doing, they knew the tanker would have to use the loading rack in such a way, and in such a way only, that it would have to back out upon the coast highway in the manner described.

There are many reasons why this contention is entirely untenable.

Concededly, none of these defendants had any right to control or direct the movements of the tanker, nor did they exercise any control over its movements. In the absence of such essential proof, a motion for a nonsuit should have been granted. (*Withey* v. *Hammond Lumber Co.*, 140 Cal. App. 587 [35 Pac. (2d) 1080].)

A review of the record and inspection of the exhibits showing the intersection where the collision occurred demonstrates that the manner in which the tanker was backed out

into the coast highway was not the sole and only way in which this maneuver could have been accomplished. Here the terrain at some time in the past was subject to overflow by waters of the Pacific Ocean, and the land was low and marshy. The coast highway and the private roadway were constructed upon an earthen fill, four or five feet above the level of the adjacent low lands. At the intersection itself there were no sharp angles; it was not like a street intersection in a city, with sharp angles at the street lines. It was so wide where the coast highway and the private roadway came together that the witnesses spoke of that point as a ''Y.'' There was no necessity for any vehicle entering or leaving it to make a sharp turn. It was entirely feasible for the tanker to have backed out onto the coast highway so that at the conclusion of the backing it would have been facing Long Beach on its own right hand side of the highway.

It is difficult to visualize a traffic condition on the coast highway at this place when it would not be negligence for a tanker to make a right hand U turn all over the four traffic lanes of the coast highway, starting from the wrong side of the road, and going in a direction opposite that provided by our Vehicle Code. (Sections 525 and 526, California Vehicle Code.)

In the case now under consideration, if the tanker had been backed onto the highway so that it faced north on its own right hand side of the road, its tail lights would have been plainly visible to north-bound traffic; whereas, under the facts before us, the only thing visible to the oncoming automobile which ran into it were the dark-colored side lights of the truck.

There is nothing in the record in this case which either directly or by inference establishes the fact that any of the defendants except the trucker and his employee had anything to do with the manner in which the tanker backed into the highway, or had any idea in advance that it had, as a matter of necessity, to be so backed. There is no obligation on the part of a landowner to anticipate that users of a private roadway leading to a state highway will violate the Motor Vehicle Act or be guilty of negligence. (*Schwerin* v. *H. C. Capwell Co.*, 140 Cal. App. 1 [34 Pac. (2d) 1050] ; *Meloy* v. *City of Santa Monica*, 124 Cal. App. 622 [12 Pac. (2d) 1072] ; *Kalis* v. *Shattuck*, 69 Cal. 593 [11 Pac. 346, 58 Am. St. Rep.

568] ; *Lucid* v. *Citizens Investment Co.,* 49 Cal. App. 257 [193 Pac. 161].)

■ Moreover, it is established by the record that neither the acts nor conduct of any of these three defendants was the proximate cause of the collision. The right-hand U turn of the tanker which we have described was entirely separate and distinct from any use or maintenance of the loading rack. This turn was made out in the highway, after the tanker was backed up.

■ In order to recover damages for injuries, it must be made to appear that the alleged negligence which caused such injuries was the proximate cause of the injuries sustained. There can be no intervening independent act of another party. (*Hale* v. *Pacific Tel. & Tel. Co.,* 42 Cal. App. 55 [183 Pac. 280] ; *Stackpole* v. *Pacific Gas & Electric Co.,* 181 Cal. 700 [186 Pac. 354] ; *Klarquist* v. *Chamberlain & Proctor,* 124 Cal. App. 398 [12 Pac. (2d) 664].)

The trial court should be directed to render judgment in favor of said defendants, Bixby and Olympic, pursuant to the verdict of the jury.

There is another and additional reason why there is no liability as to Continental. ■ It is true that the lessee of an oil lease has an interest or estate in real property. (*Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871].) What this interest or estate may be is, of course, to be determined from the lease. A reading of the lease makes it evident that the lessor reserved such surface rights as would not interfere with the development and production of oil upon the demised premises. This being the case, it is apparent that the defendant, Continental, was not the owner of the surface where the loading rack was located, and for this and the other reasons we have pointed out, the motion for nonsuit was properly granted.

Continental had nothing to do with the construction or maintenance of the loading rack. This defendant's representative was present at a conference between representatives of the lessor, the refining company and the trucker, at which the location of the loading rack was determined upon. It was explained that Continental was represented at this conference so that the location of the loading rack would not interfere with its rights to drill and produce oil, and so that the loading rack would be located at a place to which the Bixby

royalty oil could be conveniently conducted from Continental's storage tanks.

The judgment in favor of Continental should be affirmed. ■ Secondly, with reference to the order granting the motion for a new trial: This motion was granted pursuant to a notice to move for a new trial, which notice recited all of the usual grounds upon which such motions are made. This court will presume that the order was based upon the grounds stated in the notice, and the order will be affirmed if any one of the grounds set forth is sufficient to sustain the motion. (*Tasker* v. *Cochrane,* 94 Cal. App. 361 [271 Pac. 503]; *Gray* v. *Robinson,* 33 Cal. App. (2d) 177 [91 Pac. (2d) 194]; *LaRue* v. *Barr,* 208 Cal. 493 [282 Pac. 10]; *Phillips* v. *Powell,* 210 Cal. 39 [290 Pac. 441].)

There must be a clear showing of abuse of discretion before a reviewing court will reverse an order granting a new trial; this must be manifest abuse of discretion by the trial court. (*Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156 [47 Pac. 1019]; *Kenezleber* v. *Wahl,* 92 Cal. 202 [28 Pac. 225]; *Brannock* v. *Bromley,* 30 Cal. App. (2d) 516 [86 Pac. (2d) 1062]; *Kohlhauer* v. *Bronstein,* 9 Cal. App. (2d) 166 [48 Pac. (2d) 994]; *Heintz* v. *Cooper,* 104 Cal. 668 [38 Pac. 511].)

■ As we have already indicated, it was negligence on the part of the truck driver to have backed this heavy tanker so that he had to turn it in the wrong direction upon a fast and heavily traveled through highway. The only way in which the defendant truckers could prevail was to convince the jury that the driver of the automobile was guilty of contributory negligence, and that this contributory negligence was imputed to the survivors of the decedent who bring this action.

When the collision occurred it was a bright, clear night, and the automobile, without slackening its speed, ran right into the tanker. The jury evidently found contributory negligence upon the part of the deceased driver of the automobile and imputed it to the other decedent and to the plaintiffs in this case; because the verdict was in favor of the defendant truckers.

In coming to this conclusion, evidence that the driver of the automobile was under the influence of intoxicating liquor, and that those riding with him knew it, must have been given great weight by the jury.

■ It is only when a person riding as a passenger in an automobile has actual knowledge or must have known of the intoxicated condition of the driver that the passenger may be charged with contributory negligence in riding with him. (*Lynn* v. *Goodwin,* 170 Cal. 112 [148 Pac. 927, L. R. A. 1915 E, 588]; *Smith* v. *Schwartz,* 14 Cal. App. (2d) 160 [57 Pac. (2d) 1386].)

The plaintiff widow testified positively that there was no drinking by anyone in the party on the day of the accident. There was found a glass container in the automobile with some wine in the bottom of it. There was testimony that there was a broken pint bottle of whiskey found about the automobile after the accident. Witnesses testified that there was no odor of alcohol on the bodies of the decedents; other witnesses testified that there was. An employee of an undertaking establishment in which the bodies were embalmed testified that he smelled liquor on the bodies of both men, and in a purge emanating from their stomachs.

In support of the motion for a new trial plaintiffs presented the affidavit of the widow of the driver of the automobile (who was in the east and did not testify at the trial) to the same effect as the testimony of the other widow; and presented the affidavit of another employee of the undertaking parlor. If the facts recited in the latter affidavit are true and were testified to by the affiant, grave doubt would be cast upon the truth of the testimony of the undertaker's assistant who did testify.

The use or abuse of liquor is many times an important and controlling factor in the decision of negligence cases involving the operation of motor vehicles. But testimony as to liquor in these cases if improperly admitted can be the means of arousing prejudice in the minds of jurors, which should have no place in a finding as to any fact. Trial judges should at all times be alive to the possibility of this sort of prejudice, and if convinced that such prejudice influenced in any manner the verdict of a jury, there should be no hesitation in making an order granting a new trial.

Whether this additional testimony would possibly have changed the verdict of the jury; whether their verdict may have been to any extent the result of prejudice; whether in the interest of due administration of justice and in the securing to the plaintiffs of their constitutional right of due process of law—these and many other questions are by our law

left to the sound discretion of the trial judge who hears the evidence along with the jury. There is nothing in this case which would warrant this court in interfering with the exercise of this discretion by the trial judge in granting the motion for a new trial.

For the reasons heretofore given, the judgment in favor of the Continental Oil Company is affirmed; the order granting the motion for new trial as to Fred H. Bixby Company and Olympic Refining Company is reversed and the trial court is directed to render judgment in their favor, pursuant to the verdict of the jury; and the order granting the motion for a new trial as to the other defendants is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied February 20, 1942, and appellants' petitions for a hearing by the Supreme Court were denied March 30, 1942.