JESSIE L. PETERSON v. WALTER LANG.[1]

May 15, 1953.

No. 35,972.

[1]Reported in 58 N. W. (2d) 609.

*Josiah E. Brill,* for appellant.
*Freeman, Larson & Peterson,* for respondent.

MATSON, JUSTICE.

Plaintiff in a personal injury action appeals from a judgment for the defendant.

The automobile accident occurred January 2, 1950, at about 3 p.m., on a straight section of highway No. 212 about three miles west of Brownton, Minnesota, when a car driven in an easterly direction by plaintiff's husband and in which the plaintiff was a passenger collided with the rear of a car being towed by defendant's tow truck. The highway runs east and west and consists of two concrete slabs each 11 feet wide. The shoulders on both sides of the highway are four and one-half to five feet in width. Beyond the shoulder on the north side of the highway is a ditch about three and one-half to four feet deep. A section of this ditch is filled in to a width of 18 to 20 feet to provide a ditch crossing or road entrance to a field adjoining the highway. The highest part of this ditch crossing is level with the highway shoulder but from there declines toward the field. Near the accident scene a section of the highway shaded by a grove of trees was covered with glare ice. How far the glare ice extended to the west is undisclosed. The highway was generally clear of ice, but there was a little snow on the shoulders. A light

snow, not sufficient to impair visibility, was falling at the time of the accident.

Defendant was engaged in towing out of the ditch on the north side of the highway a car belonging to one Melvin Mootz. This car had been pulled from the ditch onto the ditch crossing and the front end had been hoisted off the ground by a winch on the back of defendant's tow truck; Mootz remained in his car while it was being towed. *Before defendant proceeded onto the highway,* red lights on the back of his truck were burning and *the truck itself was on the north shoulder facing in an easterly direction; the Mootz car was facing approximately in the same direction and rested on the ditch crossing.* The defendant's tow truck was 18 feet long and the Mootz car, 16 feet long so that, with a two-foot space between the truck and the car, their over-all length was 36 feet.

Plaintiff's husband was driving his car east on the highway; plaintiff was in the middle of the front seat between her husband and her son. The car was moving at less than 40 miles per hour when plaintiff's husband first observed the defendant's tow truck and the Mootz car on the north shoulder about one-half mile ahead of them.

The evidence most favorable to the verdict is that the defendant started across the north lane of the highway when the Peterson car was 990 to 2,640 feet to the west. The defendant pulled to his right across the north lane at a southeasterly angle at about five miles per hour and then moved into the south lane where he straightened out and proceeded in an easterly direction. Within 15 seconds after starting across the highway, both the tow truck and the Mootz car were entirely within the south lane. The front end of the truck had traveled about 111 feet and the rear of the Mootz car had traveled about 75 feet *in an easterly direction in such south lane* when the right front part of the skidding Peterson car hit the center of the rear of the Mootz car thereby causing plaintiff's injuries. Although the Peterson car was traveling partially in the north lane, the actual impact occurred in the south lane. After the

accident, the defendant's truck and the Mootz car were in the south lane and the Peterson car was in the north lane.

The jury returned a verdict for the defendant. Plaintiff's motion for a new trial was denied and judgment for the defendant was entered. This appeal is taken from that judgment.

The issues raised by this appeal relate to alleged errors in trial court's instructions with respect to (1) negligence as a matter of law, (2) the applicability of the right-of-way rule under M. S. A. 169.20, subd. 4, and (3) proximate cause.

■ Was defendant negligent as a matter of law in entering upon the highway and crossing the north lane to enter the south lane with the Mootz car behind his tow truck when he actually knew that the pavement area at the scene of the accident was covered with slippery glare ice which, when reached by the approaching Peterson car, would make it difficult to keep such vehicle under control? What a man may reasonably anticipate, in the light of all the surrounding circumstances such as the condition of the road surface and the nearness and speed of approaching vehicles, is important and may be decisive in determining whether an act is negligent.[2] The act of entering and driving upon a highway with knowledge of its slippery condition does not of itself constitute negligence in the absence of a showing that it involved an unreasonable risk of injury under the circumstances. As usual, the evidence herein is conflicting. The evidence most favorable to the verdict, however, establishes that, when the defendant started across the highway, the Peterson car was from about one-fifth to one-half mile to the west. The record is silent as to how far the icy section of the highway extended in a westerly direction from the accident scene. Since the plaintiff did not prove how far west the icy surface extended and since the defendant did not admit that he knew the icy condition extended far enough to the west to prevent the Peterson car from stopping in time to avoid a collision, the question of whether the defendant should reasonably have anticipated that

[2]Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640; Kopp v. Ryckman, 238 Minn. 342, 57 N. W. (2d) 31.

starting onto the highway under the circumstances involved an unreasonable risk of injury was properly left to the jury's determination. The evidence under the circumstances is sufficient to sustain a finding of no negligence on the part of the defendant.

 Did the trial court err in its instructions to the jury with respect to the application of § 169.20?[3] The trial court instructed the jury as follows:

"* * * In determining whether the statute applies, you must, of course, first determine whether or nor the defendant Lang entered the highway from a private roadway or farm approach. Also, you must find that the Peterson automobile was approaching the farm crossing so close as to constitute an *immediate hazard;* that is, was the Peterson car so close to the defendant Lang's truck that if the Peterson car maintained its same course and the same rate of speed that then a collision would be *inevitable* if the defendant Lang proceeded across the highway. If it was, then the Peterson car may be said to be approaching the point where the defendant's truck, within the meaning of the law, where the defendant's truck was located, and under such circumstances the Peterson car would have the right-of-way.

"If at the time the defendant Lang entered the highway the Peterson car *was so far away that a reasonably prudent person would have no reason to believe that if the Peterson car did continue its course and maintained its rate of speed there would be no immediate hazard of collision,* then, of course, the statute would not apply, or at least there would be no violation of it." (Italics supplied.)

[3]Insofar as here material § 169.20 provides:

"Subdivision 1. * * *

"When two vehicles enter an intersection from different highways at *approximately* the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

\* \* \* \* \*

"Subd. 4. The driver of a vehicle entering or crossing a highway from a private road or driveway shall yield the right of way to all vehicles *approaching* on such highway." (Italics supplied.)

Clearly a ditch crossing designed as an entrance from a highway to an adjoining farmer's field is a private road or driveway within the meaning of § 169.20, subd. 4, which provides that a vehicle entering or crossing a highway from a private road or driveway shall yield the right of way to all *approaching* vehicles. It is to be presumed that the legislature in granting the right of way to *approaching* vehicles did not intend the absurd or unreasonable result of including distant vehicles which are wholly outside any zone of danger. M. S. A. 645.17(1). As applied to vehicles advancing on the highway, the word *approaching* must be given a reasonable construction. A vehicle on the highway is *approaching* within the meaning of the statute when such vehicle is so close that, if it continues in the same course at the same speed, there is a reasonable likelihood or danger of collision should the vehicle on the private road or driveway enter upon or cross the highway. If there is a reasonable likelihood of a collision, it is the duty of the driver of the vehicle on the private road to delay his entry on the highway until the other vehicle has passed.[4] If, however, the approaching vehicle is so far away that a reasonably prudent person would have reason to believe that, if such vehicle maintains its course at the same rate of speed, there is no reasonable likelihood or imminent danger of collision, a driver upon a private road may enter upon the highway without violating the statute. Whether under the circumstances of a particular case the driver upon a private road has acted as a reasonably prudent person with respect to approaching vehicles in entering upon or crossing the highway is usually a question of fact for the jury.[5]

It is apparent that, although § 169.20, subd. 4, is controlling with respect to defendant's movements as he entered upon the highway, the trial court in its instructions applied the rule of § 169.20, subd. 1, which governs the entry into an intersection of vehicles coming from different highways. In Moore v. Kujath, 225

[4]Packar v. Brooks, 211 Minn. 99, 300 N. W. 400; Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329.

[5]Cf. Bosell v. Rannestad, 226 Minn. 413, 33 N. W. (2d) 40.

Minn. 107, 112, 29 N. W. (2d) 883, 886, 175 A. L. R. 1007, in construing subd. 1 of the above section this court said:

"* * * By *approximately,* the legislature must have meant the approach to an intersection of two vehicles so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed."

The "imminent hazard of a collision" test adopted in the Moore case is for all practical purposes synonymous with the "reasonable likelihood or danger of a collision" test which we hold applicable under subd. 4 of the statute. The two tests involve only a difference of phraseology and may be used interchangeably without error. Plaintiff contends, however, that it was error to define an "imminent hazard" as an "immediate hazard." The word "imminent" is defined as "threatening to occur immediately" by Webster's New International Dictionary (2 ed.) (1947) p. 1245. It follows that no error occurred in substituting the word "immediate" for the word "imminent." It was error, however, to charge in effect that a collision must be *inevitable.* The driver of a vehicle which does not have the right of way, whether it be under subd. 1 or subd. 4 of the statute, cannot lawfully proceed merely because a collision is not *inevitable.* The "imminent hazard" and the "reasonable likelihood or danger of a collision" tests obviously require a higher degree of care than that which is imported by the use of *"inevitable."* The error, however, was not prejudicial because in the paragraph immediately following the one in which the word "inevitable" was used the court gave the jury the equivalent of the "reasonable likelihood or danger of a collision" test. *Taking the charge as a whole,* which must be done in ascertaining its correctness, the error at its worst was an inadvertent verbal error. Although the trial court requested that its attention be called to any omission or inadvertent statement in its charge to the jury, counsel for plaintiff did not call attention to the erroneous use of the word "inevitable." Under Rule 51 of the Rules of Civil Procedure no party may assign as error unintentional misstatements and verbal errors or omissions in the

charge unless the trial court's attention is distinctly called thereto before the jury retires to consider its verdict.[6]

Plaintiff further asserts that the trial court erred in instructing the jury that before she could recover defendant's negligence must be found to be *the* proximate cause of her injuries. Plaintiff's argument is that, since she could recover irrespective of her husband's negligence, she could recover against the defendant although the latter's negligence was only *a* proximate cause and not *the* proximate cause. Plaintiff is of the opinion that by the charge that the defendant's negligence must be *the* proximate cause the jury was confused and led to believe that the conduct of plaintiff's husband had something to do with the question of proximate cause and that thereby the defendant was erroneously given the benefit of the defense of contributory negligence. We need give little consideration to such alleged error because in another part of the charge the trial court pointed out with clarity that:

"In this case *whether or not Mr. Peterson was negligent is of no concern.* The only question in the case is whether or not Mr. Lang, the defendant in the case, was negligent, and *whether his negligence caused or concurred in causing* the collision and consequent injuries to the plaintiff Jessie L. Peterson." (Italics supplied.)

Under the above instruction, no error could have occurred.

We find no prejudicial error and the judgment of the trial court must be affirmed.

Affirmed.

---

[6]The last two sentences of Rule 51, the ones with which we are here concerned, are in accord with our former decisions. See, 2 Youngquist & Blacik, Minnesota Rules Practice, p. 555; Minnesota Rules of Civil Procedure, Tentative Draft, p. 175; Chapman v. Dorsey, 235 Minn. 25, 49 N. W. (2d) 4; Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912.