414 P.2d 445

**W. A. REED and Susan Reed, husband and wife, Plaintiffs-Respondents,**

**v.**

**Joseph G. GREEN and Sinclair Refining Company, a corporation, Defend-ants-Appellants.**

**No. 9696.**

Supreme Court of Idaho.

May 18, 1966.

Rehearing Denied June 7, 1966.

Parsons, Smith & Snow, Burley, for appellants.

**528**

Bellwood & Goodman, Rupert, for respondents.

McFADDEN, Chief Justice.

Plaintiffs-respondents instituted this action to recover damages for the death of their minor daughter, Charlotte Ann Reed, resulting from a collision between the automobile in which she was riding and a tank-truck and tank-trailer of the appellant Sinclair Refining Company, driven at the time of the accident by appellant Green. The accident occurred at about 11:30 p. m., March 8, 1963, on Main Street, also designated as Highway 30, in Burley, Idaho.

Following trial by the court, sitting without a jury, the court entered findings of fact, conclusions of law and judgment awarding the respondents $10,993.10 damages, from which judgment this appeal was taken.

The accident occurred near the western limits of Burley. The highway at that point runs generally in an east and west direction; it was straight with unobstructed vision to the west for 1000 feet or more; some distance to the east there was a slight turn in a southeasterly direction. This highway has two westbound and two eastbound lanes of traffic marked by solid double yellow lines down the center.

The night of the accident Joseph Green, was driving a Mack tank-truck with tank-

trailer of the appellant Sinclair Refining Company, his employer. Green had loaded the tanks with fuel from a pipe-line terminal east of Burley for transportation to the company bulk plant adjacent to and north of the highway at the place where the accident occurred. After loading the truck and trailer, Green proceeded west through Burley, and stopped at a railroad track crossing the highway. He then continued on, made a left turn to the south across the highway, and entered a parking area of the Union Seed Company, adjacent to the highway on the south. He proceeded through the parking area, and made a half circle turn to the right to cross the highway from the Union Seed Company area to the Sinclair property north of the highway. Green stopped at the Union Seed Company curb cut leading to the highway, shifted his truck into first gear, and looked for traffic coming from the east and west. He observed no cars approaching from the east, but saw two coming from the west and waited until they passed, and then started across the highway to enter the bulk plant. When Green was about halfway across the highway he saw a car driven by Cecil Matlock approaching from the east, in the westbound half of the highway. This car slowed down and stopped in the inside lane fifty feet east of the truck and trailer. Green continued driving the truck across the highway and when the truck itself was inside the west gate of the

bulk plant, with the trailer crossing the westbound lanes, Green saw another car rapidly approaching from the east. This car was driven by Joseph Dale Durham; in it respondents' daughter was riding.

On the evening of the accident Durham had been "dragging" Main Street, which term was used in the vernacular, meaning two cars racing from a stop. Just prior to the accident Durham was driving west on the highway to take some of the occupants of his car to work in plants west of Burley. Durham was driving in the outside west bound lane, and at the same time another car driven by Arthur Ramsey, was driving along the inside west bound lane and beside the Durham car, with the occupants of the two cars talking back and forth. Everett Mounce observed these two cars driving along together as they passed the intersection of Occidental Avenue and Main Street, [which intersection was about 690 feet east of the point of the accident]. Mounce, at the time he observed the cars was stopped on Occidental Avenue at its intersection with Main Street.

Both the Ramsey and Durham vehicles continued west about even with each other. When they neared the Matlock vehicle, stopped in the inside lane some 50 feet east of the truck and trailer, the Ramsey vehicle turned to the left to miss the Matlock vehicle, and the Durham vehicle continued straight in the outside lane until

just a few feet from the trailer, when it turned to the left, and struck the right rear dual wheels of the trailer which was in the inside lane of the west bound traffic. When the Durham car hit the right rear dual wheels, it sheared the bolts from the trailer chassis and drove the dual wheels out from underneath the rear end of the tank-trailer.

The trial court found that appellant Green at the time he started across the highway had about six hundred ninety feet visibility along the highway to the east. The trial court also found that the crossing could be accomplished by the truck in twenty seconds, and that a driver proceeding west on the highway driving thirty-five miles per hour requires only 13.44 seconds to travel the distance from the point of eastern most visibility to the point of the accident. The trial court concluded that the appellants were negligent and their negligence was the proximate cause of the accident and death of respondents' daughter.

Appellants have assigned as error the finding by the trial court that visibility was only 690 feet to the east, asserting the evidence shows visibility was 850 feet, and also that the court erred in its finding that it was impossible for appellants truck and trailer to cross the highway in the time it takes westbound traffic not visible to the driver of the truck and trailer, approaching and travelling within the legal speed limit to reach the crossing point.

Green testified that he could see westbound traffic from the east as far as Occidental Avenue. Detective Higens of the Burley police department testified that from the Union Seed Company curb cut to the center of Occidental Avenue was 690 feet. Higens also testified that he had measured the distance from the curb cut of the Union Seed Company to the most distant point visible to the east of the oustide lane for westbound traffic, which point was at the west end of Shelley Processing Plant, and that distance was 850 feet. Officer Wright of the Burley police department in his testimony fully corroborated Higens' testimony in regard to the distance a person could see down the highway to the east from the Union Seed Company curb cut.

The trial court in remarks at the close of the case stated: "I further find that visibility for westbound traffic in the area of the point of impact extends at least to Occidental Avenue and perhaps to the east for another one or two hundred feet." The trial court in a written opinion stated: "Simple arithmetic establishes that a driver going west at thirty-five miles per hour takes only 13.44 seconds to travel the distance from the point of easternmost visibility to the crossing point." It is established that a vehicle traveling at thirty-five miles per hour traverses 51.33 feet per second, and from that it is evident the trial court in its opinion considered 690 feet as the most easterly distance appellant Green could see

down the highway to the east. Nevertheless the trial court's finding was that appellant Green could see only 690 feet to the east.

The trial court in reaching the conclusion of law that respondents were negligent relied upon the cases of Sandberg v. Spoelstra, 46 Wash.2d 776, 285 P.2d 564 (1955) and Kerlik v. Jerke, 56 Wash.2d 575, 354 P. 2d 702 (1960). In the Sandberg case the Washington Supreme Court stated:

> "Plaintiff's driver had a right to take the truck and trailer back onto the highway from the parking place on the private driveway, but in leaving such parking place it was his duty: (1) to bring his vehicle to a full stop at a point where, before entering the highway, he could see traffic approaching from either direction; (2) to look in both directions and observe traffic conditions; (3) to yield the right of way to all vehicles upon the highway; and (4) to adopt such additional precautions as may have been necessary to assure a reasonable margin of safety under the existing circumstances." 285 P.2d at 566.

In that case the plaintiff truck driver was leaving a private driveway and entering a highway at a point 375 feet from a blind curve, and as he was entering the highway another truck came around the curve and there was a collision. The action was brought by plaintiff for damages to his truck, and the defendants cross-claimed for damages to their truck. The trial court dismissed both the complaint and cross-complaint. The Supreme Court of Washington upheld the trial court's judgment that the plaintiff's driver was negligent in entering the highway at a point where he did not have sufficient visibility to assure him that he could proceed across the highway without interference, and that such negligence was a proximate cause of the accident.

Kerlik v. Jerke, 56 Wash.2d 575, 354 P.2d 702 (1960), was an action for damages sustained when the plaintiff's automobile traveling on an arterial highway, struck defendants' automobile while it was attempting to enter the highway from a private parking area. The defendant driver was held negligent as a matter of law in failing to stop and observe the highway from a point where traffic could be seen. The court relied upon and quoted from Sandberg v. Spoelstra, supra.

Two statutes involved in this action are:

I.C. § 49–730: "The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on said highway."

I.C. § 49–521(a): " 'Right of way.'—The privilege of the immediate use of the roadway."

The facts are without dispute that Green stopped at Union Seed Company curb cut

before entering upon the highway, and that he looked both directions before attempting to drive across the highway; that he allowed two cars approaching from the west to pass, and entered upon the highway at a time when no cars were visible to him. To the west he could see over a thousand feet, and to the east he could see no cars approaching for more than 690 feet. Under these facts, even considering the length and size of the loaded truck and trailer, it is difficult to see where he violated the provisions of I.C. § 49–730. That section requires a driver about to enter or cross a highway from a private road or driveway to yield the right of way [the privilege of the immediate use of the roadway] only to vehicles approaching on said highway. The facts fail to disclose that the Durham vehicle was "approaching" as that term is generally understood.

The verb "approach" has been defined as 'to come or go near or nearer to in place or time; draw nearer to; to come or go near or nearer to in character or quality." Webster's Third New International Dictionary. "Approach" connotes "near, draw near or nigh, go or come near, come closer or nearer, come to close quarters," and the adjective "approaching" connotes, "nearing, advancing, coming, oncoming, forthcoming". Roget's International Theasaurus, Third Ed.

In discussing the term "approaching" as used in a statute similar to and comparable with I.C. § 49–730, the Supreme Court of South Dakota in Dwyer v. Christensen, 77 S.D. 381, 92 N.W.2d 199, 202 (1958), stated:

" 'In Peterson v. Lang, 239 Minn. 319, 58 N.W.2d 609, 612, the court in interpreting the meaning of a statue similar to SDC Supp. 44.0319 stated:

" 'It is to be presumed that the legislature in granting the right of way to *approaching* vehicles did not intend the absurd or unreasonable result of including distant vehicles which are wholly outside any zone of danger.'

"When we apply the word *approaching* to vehicles advancing on the highway this must be given a reasonable construction. A vehicle on the highway is *approaching* within the meaning of the statute when such vehicle is so close that if it continues in the same course at the same speed there is a reasonable likelihood or danger of collision should the driver of a vehicle entering the public highway from a private road or drive fail to yield the right of way. Peterson v. Lang, supra. It is apparent here that when defendant backed his car upon the highway there was no reasonable likelihood or danger of collision with plaintiff's car. Reasonable minds could not differ as to this. The instruction as re-

quested by plaintiff is not applicable under the facts of this case."

In Peterson v. Lang, in addition to that portion of the opinion quoted by the South Dakota court above, it is stated:

"As applied to vehicles advancing on the highway, the word *approaching* must be given a reasonable construction. A vehicle on the highway is *approaching* within the meaning of the statute when such vehicle is so close that, if it continues in the same course at the same speed, there is a reasonable likelihood or danger of collision should the vehicle on the private road or driveway enter upon or cross the highway. If there is a reasonable likelihood of a collision, it is the duty of the driver of the vehicle on the private road to delay his entry on the highway until the other vehicle has passed. If, however, the approaching vehicle is so far away that a reasonably prudent person would have reason to believe that, if such vehicle maintains its course at the same rate of speed, there is no reasonable likelihood or imminent danger of collision, a driver upon a private road may enter upon the highway without violating the statute. Whether under the circumstances of a particular case the driver upon a private road has acted as a reasonably prudent person with respect to approaching vehicles in entering upon or crossing the highway is usually a question of fact for the jury." 58 N.W.2d at 612 to 613.

California appellate courts have considered the application of a statute, comparable to I.C. § 49–730, i. e., Sec. 553 Calif. Vehicle Code [§ 21804 Vehicle Code]. In Shannon v. Thomas, 57 Cal.App.2d 187, 134 P.2d 522 (1943), it was held that the purpose of the requirement of Sec. 553, is to prevent drivers on private roads from entering the highway when another vehicle is approaching so near as to constitute an immediate hazard. In Pandell v. Hischier, 166 Cal.App.2d 693, 333 P.2d 762 (1959), it was held that a prospective entrant from a private road may lawfully enter the highway so long as there is no vehicle so near as to constitute an immediate hazard.

In Wakefield v. Horn, 109 Cal.App. 325, 293 P. 97 (1930), plaintiff drove his truck from a private road while defendant's car on the main highway was some 255 feet away. In upholding judgment for the plaintiff, that court stated:

" * * * and the only point made is that, at the time the truck emerged from the private road to the highway, the defendant Mary Horn, driving her car as aforesaid, had the right of way. This is based upon the provisions of subdivision b of section 131 of the California Vehicle Act of 1923 * * * which then read: 'The driver of a vehicle entering a public highway from a private

road or drive shall yield the right of way to all vehicles approaching on said public highway.' The argument is made that, irrespective of the distance between the approaching car driven by the defendant Mary Horn and the private highway on which the truck was emerging, it gave the defendant the right of way. The subdivision of the section, however, is not susceptible of any such interpretation. If interpreted literally as the subdivision reads, or as it then read, no one could ever drive from a private road upon a public highway if any one were approaching upon such highway, irrespective of the distance. The subdivision must be construed to give effect to the intent of the Legislature, which was to prevent automobile drivers on private roads from entering a public highway when a car was approaching upon such highway so near as to constitute an immediate hazard, and not that no one should enter upon a public highway from a private road or driveway so long as the public highway was in use." 293 P. at 98.

The interpretation given by the court to the California code provisions in Wakefield v. Horn, supra, has been followed by the Court of Appeal of California in subsequent cases. In Pandell v. Hischier, supra, the court stated:

"Section 553 of the Vehicle Code provides that: 'The driver of a vehicle about to enter or cross a highway from any private road or driveway or from an alley * * * shall yield the right of way to all vehicles approaching on said highway.' Literally, this section would require the prospective entrant from a private road to yield the right of way to all vehicles on the highway regardless of where they were. This would be an unreasonable interpretation. For that reason, the courts have interpreted the section to mean that a prospective entrant from a private road may lawfully enter a highway so long as there is no vehicle so near as to constitute an immediate hazard. Wakefield v. Horn, 109 Cal. App. 325, 293 P. 97; Jansen v. Sugiyama, 29 Cal.App.2d 717, 85 P.2d 476; McDougall v. Morrison, 55 Cal.App.2d 92, 130 P.2d 149; Malinson v. Black, 83 Cal. App.2d 375, 188 P.2d 788; See cases collected 7 Cal.Jur.2d p. 54, § 243." 333 P.2d at 763.

Where, as in Idaho, "right of way" means "the privilege of the immediate use of the roadway", I.C. § 49–521(a), the reasoning of the California courts set out above is persuasive here. If any other interpretation were given the meaning of the I.C. § 49–730, appellant Green would never have been lawfully entitled to cross the highway as long as any vehicles were upon

the highway, whether he could observe them or not.

Even though the trial court found the range of Green's vision of oncoming traffic to his right to be 690 feet, the un-refuted and unimpeached testimony of offi-cers Higens and Wright, which was not inherently improbable, indicated Green's view of oncoming traffic was some 850 feet.[1] With no approaching vehicles in view, Green had the right to commence crossing the highway at the time he did. The distance of his unobstructed view was such that it cannot be said he was negli-gent in crossing the highway. When he entered the highway under these circum-stances he was fully complying with the law. After once lawfully gaining entry upon the highway, vehicles approaching in the interim period between commencement and completion of the crossing were under the duty either to slow down or stop. I.C. § 49-701(a). Drury v. Palmer, 84 Idaho 558, 375 P.2d 125; 60 C.J.S. Motor Vehicles § 347b, p. 811. The trial court was in error in finding the appellants negligent in that regard.

Appellants cannot be held guilty of negligence by the action of Green driving his truck across the double yellow line. The double yellow line was only to divide eastbound from westbound traffic, and was the authorized marking for the center line on a two-way street with four or more lanes for moving traffic. See Manual on Uniform Traffic Control Devices for Streets and Highways, U. S. Department of Commerce, June 1961, p. 121 2B-3, which was adopted by the Idaho Board of High-way Directors by order of September 19, 1961. This double yellow line did not cause this highway to be a "divided highway" within the meaning of I.C. § 49-718, which proscribes the driving over, or across the dividing space, barrier or section of a high-way divided into two roadways by leaving an intervening space or by physical barrier or clearly indicated dividing section so con-structed as to impede vehicular traffic.

Nor can the appellants be charged with negligence towards the respondent's daughter in the fact that Green entered into the Union Seed Company parking area preparatory to crossing the highway. At the time this truck and trailer crossed from the westbound lane over the eastbound lane and into the parking lot, the occupants

---

1. " * * * either a board, court or jury must accept as true, the positive, uncon-tradicted testimony of a credible witness, unless his testimony is inherently improb-able, or rendered so by facts and cir-cumstances disclosed at hearing or trial." Pierstorff v. Gray's Auto Shop, 58 Idaho 438, 74 P.2d 171; First Trust & Sav-ings Bank v. Randall, 59 Idaho 705, 89 P.2d 741; Idaho Times Pub. Co. v. In-dustrial Accident Board, 63 Idaho 720, 126 P.2d 573; Watkins v. Watkins, 76 Idaho 316, 281 P.2d 1057; National Ro-Tile Corp. v. Loomis, 82 Idaho 65, 350 P.2d 217.

of the Durham car were so far from the scene that negligence, if any there was, could not be considered as connected with the tragic accident. See Sandberg v. Spoelstra, 46 Wash.2d 776, 285 P.2d 564, 565 (1955), which held to the effect that it was not negligence for a truck to make a left turn off of a highway, absent any oncoming or following traffic.

The judgment of the trial court is reversed.

Costs to appellants.

McQUADE and SMITH, JJ., concur.

SPEAR, Justice (dissenting).

I dissent.

Since 1903 this court has consistently adhered to the principle that the findings of fact of a trial court, sitting without a jury, will not be disturbed on appeal where such findings are sustained by substantial evidence even though there may be other conflicting evidence. In Parke v. Boulware, 9 Idaho 225, 73 P. 19, Chief Justice Sullivan, in an opinion concurred in by Justice Ailshie, expressed this principle thusly:

> "We have examined the evidence carefully, and, while there is a decided conflict in it, we think the findings of fact are sustained by it. That being true, the well-settled rule that where there is a substantial conflict in the evidence, the

findings will not be disturbed, must be adhered to."

More recently this same principle has been expressed as:

> "Where the findings of the trial court are supported by substantial and competent, though conflicting, evidence, such findings will not be disturbed on appeal." Edgeller v. Johnston, 74 Idaho 359, 262 P.2d 1006; Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738; Molstead v. Reliance National Life Insurance Co., 83 Idaho 458, 364 P.2d 883; Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630; Jackson et al v. Blue Flame Gas Company, 90 Idaho 393, 412 P.2d 418 (1966).

Another principle long adhered to by this court is that the trial judge is the arbiter of conflicting evidence, and his determination of the weight, credibility, inference and implications thereof is not to be supplanted by this court's impressions or conclusions from the written record. Sellars v. Sellars, 73 Idaho 163, 248 P.2d 1063; Fish v. Fleishman, 87 Idaho 126, 391 P.2d 344; Jackson et al v. Blue Flame Gas Co., supra.

These principles are most aptly expressed by Justice Givens in speaking for a unanimous court in Conley v. Amalgamated Sugar Co., 74 Idaho 416, 263 P.2d 705, wherein he stated:

> "After the court has found, the criteria are not what other or different findings

the evidence could or would sustain, not what findings are plausible, not the weight or quality of the evidence or credibility of witnesses, but the sole criterion is simply whether there is substantial evidence, regardless of conflict, to sustain the findings as made, with all reasonable inferences and intendments in favor thereof. This proposition is so universal, so oft repeated and adhered to as to need no citation of authority in support thereof. It is not what evidence tends to support appellant, or negative that favorable to respondents, but it is what evidence tends to support respondents, with all reasonable inferences and intendments to be drawn in favor of respondents, which controls the determination of the controversy in this Court.

"It is almost axiomatic that the time and place to win the factual features of a law suit is in the trial tribunal, not in the appellate court." (found at page 424, 263 P.2d at page 709)

Now let us apply these principles to the case at hand.

After listening to the testimony of the witnesses and having the advantage of observing them personally, and having weighed all the evidence carefully, the trial court made the following pertinent findings of fact:

"6. That the accident in which deceased was involved as herein described took place at about 11:30 o'clock P.M., and as a result of the accident the decedent was killed.

"7. That U. S. Highway 30 is a four-lane highway divided by two yellow lines, with two lanes of traffic for travel in each direction, and in the area of the accident the double yellow lines are continuous and unbroken.

"8. That immediately preceding the accident, the defendant, Joseph G. Green, drove the Sinclair truck and trailer from private property on the south side of said U. S. Highway 30 in a northeasterly direction over and across said highway, said truck and trailer being about sixty feet in length, attempting to enter the bulk plant of Sinclair Refining Company on the north side of said highway. That said crossing attempted by the defendant, Joseph G. Green, is about eighty feet, taking about twenty seconds *at a minimum* to accomplish the complete crossing of said highway, in a truck of the type driven by said defendant, Joseph G. Green on the night of the accident. That from the point of the beginning of the crossing, the Union Seed curb cut, the driver of said truck had a visibility of westbound traffic on said highway of about six hundred ninety feet. That the speed limit as established by proper authorities from the point of ultimate visibility to the point of the im-

pact is thirty-five miles per hour. To the west from the place of the accident and west of the City of Burley said highway enters a more or less open area with a less restrictive speed limit. [emphasis supplied]

\*    \*    \*    \*    \*    \*

"10. That at the time of said accident the said trailer was blocking all of the outside lane and a part of the inside lane of the road which was for westbound traffic.

\*    \*    \*    \*    \*    \*

"17. That preceding the Durham automobile west was an automobile driven by one Cecil Matlock and the Matlock automobile was proceeding west followed by two automobiles, one driven by Dale Durham and one driven by Art Ramsey.

"18. That the Sinclair bulk plant is located on the north of U. S. Highway 30 and had and has an opening for travel on the west and on the east ends of the property. That the defendant, Joseph G. Green, could have unloaded the diesel fuel he was delivering on March 8, 1964, by entering the plant area from the east entrance. That all of the diesel fuel could have been unloaded by entering the plant from the east opening rather than the west opening. That it was not necessary for the defendant, Joseph G. Green, to enter the plant from the west opening as he attempted to do at the time of the accident, nor to block with his vehicle the outside and inside lanes of westbound traffic on said highway, and by entering from the east he would not block the inside lane of westbound traffic.

"19. That immediately preceding the entry of said highway Joseph G. Green could not see any westbound traffic, except the Matlock automobile.

\*    \*    \*    \*    \*    \*

"23. That a driver proceeding west on U. S. Highway 30 driving thirty-five miles per hour requires only 13.44 seconds to travel the distance from the point of easternmost visibility of the defendant, Joseph G. Green, to the crossing point where the accident occurred.

"24. That it is impossible for the crossing truck and trailer to achieve the crossing of U. S. Highway 30 in the length of time it takes westbound traffic, not visible to the driver of the truck and trailer, approaching and travelling within the legal speed limit, to reach the crossing point. That westbound traffic approaching the point of visibility to the east at about the same time the crossing of the highway begins must, unless the truck and trailer stop, slow or stop for the truck and trailer to avoid a collision. That on March 8, 1964, at the time the crossing was attempted, the vehicle driven by Dale Durham, travelling west in the outside lane of said four lane public

highway, collided with the truck. As a result of the collision the plaintiffs' daughter a nineteen year old, unmarried girl was injured and died.

"25. That the defendant, Joseph G. Green, was negligent in the operation of the truck and trailer combination in crossing U. S. Highway 30 in the manner and at the time of the accident.

"26. That entry into the Sinclair bulk plant from the easterly opening could have been achieved without any danger to traffic travelling west on U. S. Highway 30.

"27. That the said Dale Durham was driving his automobile in a lawful lane of traffic at all times mentioned herein.

"28. That the driver of the automobile, Dale Durham, was negligent in the operation of his automobile, but that the passenger, Charlotte Ann Reed, was not negligent.

"29. That the combined negligence of the defendants and Dale Durham is the proximate cause of the collision and the death of plaintiffs' daughter, Charlotte Ann Reed.

"30. That the negligence of the driver of the automobile, Dale Durham, was not a superseding cause of harm to plaintiffs' daughter, Charlotte Ann Reed.

"31. That the amount of special damages as alleged are reasonable in amount and were necessarily incurred by the plaintiffs and were actually incurred, and are the sum of $993.10, and general damages of $10,000.00 were suffered by the plaintiffs."

From these findings of fact, the trial court concluded that the negligence of both drivers Green and Durham were proximate causes of the death of the deceased daughter of respondents, that the negligence of Durham (the driver of the automobile in which the deceased girl was riding as a passenger) could not be imputed to the deceased girl nor the respondents, her parents, and awarded the respondents special damages in the sum of $993.10 and general damages in the sum of $10,000.00.

Under the principles previously cited in this opinion, the only question for this court is whether or not there is competent and substantial evidence to sustain the findings of fact of the trial court.

To assist the readers of this opinion in following and understanding the pertinent evidence adduced at the trial, there is appended to this opinion a diagram depicting the essential physical features of the scene of the accident as set out in the topog map introduced in evidence as Plaintiffs' Exhibit A.

The facts are quite fully and fairly set forth in the majority opinion, but for the purposes of this dissent I wish particularly to emphasize some of them. Referring to

the diagram (Plfs. Exh. A) and particularly the small cutout or insert at the bottom thereof, it is well to realize that defendant Green, the driver for the corporation-defendant approached the scene of the accident from the east or the right hand side of the diagram, and was travelling in a westerly direction; he stopped at the railroad track shown to be located a little west of the intersection of the Burley Main Street (also designated as State Highway 30) and Park Avenue. Green's destination was the Sinclair plant, located just to the north of West Main Street. Green admitted in his testimony that this could have been accomplished by entering the east entrance to the plant designated on the diagram as a "27-foot curb cut" and this could have been done by merely turning right from the north or westbound lane of traffic. Instead Green chose to turn left shortly after crossing the railroad track, cross the two south or eastbound traffic lanes of the highway, enter the Union Seed Company property to the south of the highway, make a half circle or U turn on this property and re-enter the highway at what is designated as a "45-foot curb cut" located just east of the Union Seed Company building. This, of course, constitutes a private road or driveway entering upon a highway. Here Green stopped, looked both ways, permitted two cars approaching from the west going east to pass, then proceeded to enter the highway and attempt to cross it diagonally to enter the Sinclair plant at the west entrance thereto, marked on the diagram as a "33-foot curb cut." One of the vital facts for the determination of this case is the visibility of Green to his right or to the east just prior to his entry onto the highway from the private driveway. It is well to remember that this is at 11:30 o'clock p. m. *It was dark.* The most reliable evidence in this entire record concerning the extent of this visibility is the testimony of Green himself. This is what he said concerning the Matlock vehicle which approached from the east and was required to slow down and stop to avoid collision with the Sinclair vehicle:

"Q  Did you observe any cars that evening?

"A  Not at the time that I started to cross, no.

"Q  When did you observe a car, Mr. Green?

"A  Well, when I was about halfway across the road, there a car I found out later was Mr. Matlock's, his lights was coming up the inside lane, and he was slowing down.

"Q  I see. And what were you doing then at that time?

"A  I was going across the road and getting into the plant.

"Q  And do you know why he was slowing down?

"A  Yes.

"Q  Why was he slowing down, Mr. Green?

"A  To give me time to get into the plant.

"Q  Do you know where he had come from?

"A  Well, he told me later he came off Occidental, yes.

(By "Occidental" the witness is referring to Occidental Avenue which intersects Main Street or Highway No. 30 just to the east of Park Avenue and is designated on the far right hand side of the insert on the diagram Plfs. Exh. A)

"Q  And this is what, a couple or three blocks from where you crossed?

"A  Yes, it is.

"Q  And it is around the curve from where you crossed, is it not?

"A  It is—you can see it—*you can just see Occidental on the north side from where*—you check both ways from the cab of your truck there when you are getting to start across the highway. [emphasis supplied]

\*    \*    \*    \*    \*    \*

"Q  And then you looked to the east. That would have been which direc-tion, right or left, that you would have looked east?

'A  Looking east, I would have been looking to my right, if I had looked to the east.

"Q  And you didn't see any vehicles on the road?

"A  I did not.

"Q  Do you know about how far you could see, Mr. Green, down to the east?

"A  To the east there you can see Occidental, and that's about the—

"Q  Occidental, looking at this cutaway here, Occidental is not on the map, marked on the map, and that is the street to which you have reference?

"A  Yes, it is.

"Q  Now, which part of Occidental can you see from the position you were here at the Union Seed marked with the small x, [the small x referred to in this question was marked by the witness in what has been referred to and is designated on the diagram as the 45-foot curb cut or private highway on the Union Seed Company property located just east of the Union Seed Company building on the diagram, Plfs. Exh. A.]

"A  You can see the north side.

"Q Would you mark that—

"A You could see the side the west coming traffic would be, yes.

"Q Would you mark that with a little number 3 on the cutaway there? Would you mark the portion of Occidental that you could see?

"A Oh, yes, see this four-lane road just about right here.

"Q That's not Occidental, is it?

"A Isn't that Occidental?

"Q Well I am asking you. Do you read the word Occidental on here?

"A Right about here where you can see right here.

"Q Will you mark that with a little 3, please.

"A Yes.

"Q That's the part you can see?

"A Yes.

"Q From where you were at Union Seed?

"A Yes.
    (The witness marked a small "3" in the cutaway on Plfs. Exh. A, on the northernmost side of the highway just east of Occidental Avenue.)

    *    *    *    *    *    *

"Q Yes, and you could see some of the traffic in this road in the northern-most lane of Main, just a little ways past Occidental?

"A Yes, you can.

"Q And it was the same on March 8, 1963?

"A That's correct."

From this testimony it is evident that the driver, defendant Green, on the night in question and immediately prior to the time of this accident, had visibility as he was parked on the south side of the highway before entering upon the highway only to a point a little east of Occidental Avenue.

As opposed to this the majority opinion relies heavily, if not entirely, on the testimony of two policemen, who took measurements *in the daylight* from the position of the defendant's truck occupied just prior to entering the highway, to a point they could see *in the daylight* on the northernmost side of Highway 30 to the east and measured this to be a distance of 850 feet. The same witnesses however further established that the highway to the east started to curve a distance of only 377 feet east of the Union Seed Company private driveway used by the defendant driver, and it gradually continued to curve to the south until there was no visibility whatever at the distance of 850 feet. These same officers further established that the distance from the private driveway to the center of the intersection of State Highway 30 and Occidental

Avenue was 690 feet. This is the distance of visibility found by the trial court, and from Green's own testimony he could see only a little farther east than that; no estimate of the additional distance in feet was ever made.

As computed by the trial court, a vehicle travelling at the legal rate of speed of 35 m. p. h. would travel the distance between Occidental Avenue and the point of impact of this collision in a matter of only 13.44 seconds. That it was impossible for Green to enter the highway from a stopped or parked position and drive his vehicle—a cab, truck and trailer—diagonally across the highway through the gate and into the Sinclair plant without obstructing the highway to traffic lawfully using the two north lanes or the ones lawfully used by traffic travelling west, is graphically shown by the fact that the car driven by Matlock had to slow down and stop some 50 feet before reaching the path used by Green in crossing the highway in order to avoid a collision with the Green-Sinclair vehicle.

The evidence is uncontradicted, that the distance to be travelled by Green across the highway was 80 feet; his cab, truck and trailer measured 60 feet in length and by his own testimony it required a period of 20 seconds for him to clear the highway. Note too that this 20-second interval was established by tests run by Green in driving a similar vehicle across this highway *in the daylight* and at times when the defendants were preparing themselves for trial of this matter. It is important to note that the trial court found the crossing attempted by Green would require 20 seconds *at a minimum.*

This is a specific instance in which the determination of the trial judge concerning the weight, credibility, *inferences* and *implications* of the evidence adduced at the trial should not be supplanted by the impressions or conclusions of the appellate court taken solely from the written record. The obvious inference and implication here is that on the night of this fatal accident at least, and probably more than, 20 seconds were required by this defendant-driver Green in crossing this highway in the dark of night endeavoring to enter a narrow gateway and make an abrupt turn to the right at the Sinclair plant. In any event it was necessary for Matlock in stopping at the intersection of Occidental Avenue at Highway 30, entering thereupon, and proceeding a distance of about 690 feet, to slow down and stop to avoid colliding with the defendant's vehicle.

As hereinbefore pointed out, in my opinion there is abundant competent and substantial evidence supplied by the defendant Green himself to sustain the finding of the trial court that his visibility to the east did

not much exceed the distance of 690 feet; but for the sake of argument let us assume that this evidence has been completely overcome by the testimony of the officers who took their measurements of the visibility in the daytime. We then have established a visibility of 850 feet. At the lawful rate of speed of 35 m. p. h. an automobile approaching from the east will be travelling at 51.33 feet per second and on the portion of the highway designated as lawful for such travel, would cover the distance of 850 feet in less than 17 seconds. The defendant's vehicle would still be three seconds short of having cleared the highway, even under the 20-second test, made by defendant in the daylight and in preparation for evidence to be adduced at the trial.

It therefore becomes obvious that Green could not enter upon and cross the highway, as attempted here, using the type of vehicle he was driving on the night of this accident, without subjecting the travelling public approaching from the east to the hazard of slowing down, stopping, or turning to the left from the lawful lanes of the highway to avoid colliding with defendant's vehicle. This is certainly a violation of the provisions of I.C. § 49-730:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on said highway."

Under the circumstances in this case, it was impossible for Green to have complied with the provisions of this statute, and his noncompliance constitutes negligence. His negligence is even more evident when, as pointed out by the trial court, he had the alternative of entering the Sinclair plant at the entrance and gateway on the east end of the Sinclair property, making such entrance from the proper northern lane of traffic, thus obviating the necessity of attempting to drive diagonally clear across four lanes of traffic from the private driveway of the Union Seed Company and necessarily blocking or obstructing the two north lanes of traffic properly to be used by the travelling public going from the east to the west at the scene of this accident.

The case of Sandberg v. Spoelstra, 46 Wash.2d 776, 285 P.2d 564, at 567 (1955), is particularly applicable here. There the court said:

"At five miles an hour it would have taken almost ten seconds to clear the westbound traffic lane if he had gone directly across the road; obviously, he had to travel farther and take longer because he was proceeding at a forward angle across the westbound traffic lane. It is clear that he gambled that either no vehicle was approaching for a considerable distance beyond the curve 375

feet away or that, if one was coming, it could and would avoid a collision by stopping, slowing abruptly, or yielding him whatever portion of the westbound traffic lane he needed."

This is precisely what defendant Green did in this case. He gambled and he lost. Such action on the part of defendant Green in violation of a positive statute could easily be deemed negligence as a matter of law.

In any event the conduct of defendant Green was such it presented facts to be submitted to the finder of facts, be it a jury or the court, on the question of negligence; and the trial court was correct in finding negligence—this being sustained by competent and substantial evidence. Sandberg v. Spoelstra, supra; Provin v. Continental Oil Co., 49 Cal.App.2d 417, 121 P.2d 740 (1942).

It cannot be seriously contended that such negligence was not one of the proximate causes of the accident and the death of the deceased girl, because "but for" the fact that the truck and trailer was blocking and obstructing all of the north lane of traffic and part of the inside north lane of traffic, the accident would never have occurred.

The fact that the driver of the other car (Durham) was also negligent, and that his negligence was an additional proximate cause of the accident and the death of the deceased girl, is immaterial. That there can be two or more proximate causes of an injury or a death is established in Idaho. Pigg v. Brockman, 85 Idaho 492, 381 P.2d 286. Under the circumstances here negligence of the driver Durham is not imputable to the passenger occupant, the deceased girl.

As one of the assignments of error, appellants contend that the judgment awarded respondent was excessive. This is bolstered by merely one paragraph in their brief, with no citations or authorities upon which to base it, and this was ignored entirely in their oral argument before the court. This was not seriously urged by appellants and should not be so considered by this court.

The judgment of the trial court should be affirmed.

**546**

BULK PETROLEUM STORAGE APPROX. 75000 GAL.

WATTLE LIVESTOCK

ARC OF GATE

ARC OF GATE

GATE

GATE

POWER POLE

A

45' CURB CUT

34' CURB CUT

33' CURB CUT

STATE HIGHWAY No. 30

WEST MAIN

45' CURB CUT

46' CURB CUT

POWER POLE

UNION SEED COMPANY
FIRE RAZED BUILDING

A

CROSS-SECTIONAL AREA A-A
SHOWN ABOVE.

OCCIDENTAL AVE.

STATE HIGHWAY No. 30
WEST MAIN

STATE HIGHWAY
No. 30

PARK AVE.

OCCIDENTAL AVE.

VICINITY MAP
SKETCH OF WEST MAIN AREA

SINCLAIR BULK PLANT LOCATION

INDEPENDENT BUILDERS YARD STORAGE

INDEPENDENT BUILDERS SUPPLY STORE

ARC OF GATE

POWER POLE

CYCLONE FENCE

GATE

27'4" CURB CUT

POWER POLE

26' CURB CUT

36' CURB CUT

RAILROAD TRACK

371' TO ℄ OCCIDENTAL FROM THIS POINT

26' CURB CUT

R.R. CROSSING SIGNAL

SIGNAL CONTROL BOX

R.R. BUILDING

44' CURB CUT

POWER POLE

A

A

| WEST MAIN TOPOG MAP | |
|---|---|
| SCALE: 1"=40' | DATE: 3-22-65 |
| DWN.BY: K.BERNTSON | |

TAYLOR, Justice (dissenting):

I concur in the dissenting opinion of Justice Spear. However, I do not agree with the view, apparently accepted by the trial court, that Green's act in driving across the highway to the south, to make a turn on the property of the Union Seed Company, could be considered as negligence contributing to the collision involved. Hunter v. Horton, 80 Idaho 475, 333 P.2d 459 (1958).